**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DINO KURT, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>FLY-E GROUP, INC., ZHOU OU, and SHIWEN FENG,<br><br>     Defendants | Case No. 25-5017<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**CLASS ACTION**<br><br><u>Demand for Jury Trial</u> |

  Plaintiff Dino Kurt ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by Fly-E Group, Inc. ("Fly-E" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Fly-E's public documents, conference calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

  Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the defendants or are exclusively within their control.

**NATURE OF THE ACTION**

  1. This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Fly-E securities between July 15, 2025, to August 14, 2025, inclusive (the

"Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

2.     Defendants provided investors with material information concerning Fly-E's overall revenue growth from sales of the Company's E-bikes, E-motorcycles and E-scooters. Defendants' statements included, among other things, confidence in Fly-E's ability to enhance its position as a leader in urban mobility solutions by growing its product and service portfolio for food and package delivery workers, expanding its international sales network, and increasing growth in the online market.

3.     Defendants provided these overwhelmingly positive statements to investors while, at the same time, disseminating materially false and misleading statements and/or concealing material adverse facts concerning the safety of Fly-E's lithium battery which in turn took a material toll on its E-vehicle sales revenue, despite making lofty long-term projections, Fly-E's forecasting processes fell short as sales continued to decline and operating expenses increased, ultimately, derailing the Company's revenue projections. Such statements absent these material facts caused Plaintiff and other shareholders to purchase Fly-E's securities at artificially inflated prices.

4.     On August 14, 2025, the truth emerged when Fly-E filed a form NT 10-Q: Notification of inability to timely file Form 10-Q for the first quarter of fiscal year 2026 revealing a substantial decrease of 32% in net revenues "primarily driven by a decrease in total units sold." In pertinent part, the Company attributed the decline to "recent lithium-battery accidents involving E-Bikes and E-Scooters." As a result of the lithium battery incidents and retail store closures, Defendants expect a further decrease in retail sales revenue for the Company's 2026 fiscal year.

5.     Investors and analysts reacted immediately to Fly-E's revelation. The price of Fly-E's common stock declined dramatically. From a closing market price of $7.76 per share on

August 14, 2025, Fly-E's stock price fell to $1.00 per share on August 15, 2025, a decline of about 87% in the span of just a single day.

## JURISDICTION AND VENUE

6. Plaintiff brings this action, on behalf of himself and other similarly situated investors, to recover losses sustained in connection with Defendants' fraud.

7. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

9. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Fly-E is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

10. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

11. Plaintiff purchased Fly-E common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in Fly-E is attached hereto.

12. Fly-E is a Delaware corporation with its principal executive offices located at 136-4- 39th Avenue, Suite 202, Flushing, New York 11354. During the Class Period, the Company's common stock traded on the NASDAQ Stock Market (the "NASDAQ") under the symbol "FLYE."

13. Defendant Zhou Ou ("Ou") was, at all relevant times, the Chief Executive Officer of Fly-E.

14. Defendant Shiwen Feng ("Feng") was, at all relevant times, the Chief Financial Officer of Fly-E.

15. Defendants Ou and Feng are sometimes referred to herein as the "Individual Defendants." Fly-E together with the Individual Defendants are referred to herein as the "Defendants."

16. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Fly-E's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

17. Fly-E is liable for the acts of the Individual Defendants, and its employees under the doctrine of respondeat superior and common law principles of agency as all the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

18. The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Fly-E under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

19. Fly-E designs, installs, and sells smart electric motorcycles, electric bikes, electric scooters, and related accessories under the Fly E-Bike brand in the United States, Mexico, and Canada. The company offers e-mopeds, e-motorcycles, e-tricycles, and e-scooters; e-bikes, including city, foldable, standard; and traditional bikes. In addition, it provides accessories and spare parts, as well as offering after sales services consisting of repair and maintenance services.

### *The Defendants Materially Misled Investors Concerning Fly-E's Substantial Growth in the EV Industry*

### *July 15, 2025*

20. On July 15, 2025, Defendants filed a Form 10-K with the SEC wherein the Company announced its financial results for the fiscal year ended March 31, 2025. Defendants wrote about Fly-E's "strong brand reputation" for high-quality EV products and its "innovative, differentiated products and services" which set them apart from competitors. The Company further discussed its strength in the EV industry, stating in pertinent part:

> **Our Strengths**
>
> ***Early Entry into the Market:*** We entered the EV market early and were able to seize the market opportunities to experience rapid growth. We started our business in 2018 and were able to leverage the potential created by the thriving E-commerce industry. Additionally, the COVID-19 lockdown further amplified the demand for online food and essential item deliveries, creating a favorable environment for the

expansion and utilization of EVs, particularly E-bikes, which further accelerated our business growth.

***Brand Reputation: We have a strong brand reputation for consistent delivery of high-quality EV products and excellent customer service. Our brand and retail stores have become reliable business partners for most food delivery workers, especially in New York City. As a result, they have come to recognize our name and trust our services, establishing a loyal customer base for us.***

***Innovative Products and Services:*** *We continue to offer innovative, differentiated products and services that help set us apart from our competitors.* ***Since 2018, we have launched over 67 new products and introduced new versions to our existing products with upgrades to design, motor and battery technology. Additionally, we are developing the Fly E-Bike app, which will be used by customers to better manage and enjoy their riding experience.*** We are also developing the Fly E-Bike Care, an extended warranty program that will provide value-added options for our customers in the near future.

[Emphasis added].

21. The 10-K also discussed strategies for growing the business, specifically expanding the Company's sales network, stating in pertinent part:

Our plan to grow our business using the following key strategies:

***Enhance our position as a leader in urban mobility: We believe we are one of the leading providers of urban mobility solutions for New York City, particularly for food and package delivery workers.*** We intend to leverage this first mover advantage to continue to solidify our market leadership, by enhancing our brand, continuing to innovate, growing our product and service portfolio and expanding our sales network.

***Improve brand recognition: We will maintain our commitment to providing exceptional customer service as a means of further enhancing our brand. We will provide an enhanced shopping experience by effectively managing and upgrading our retail stores. In addition, we plan to open more flagship stores in high-traffic retail locations in New York City and other major cities in the United States to further elevate the quality of our brand messaging. Furthermore, we plan to increase our offerings of accessories, such as introducing more style options to our branded apparel, to further strengthen our customers' connection to Fly E-Bike. We also intend to collaborate with other lifestyle brands across different industries to further promote our brand image.***

***Continue our innovation:*** We will persist in advancing our product line by incorporating cutting-edge design, optimizing user experience and delivering

6

optimal performance. We are developing our Fly E-Bike app, which we plan to include functions to improve the communication between our customers and our products. Additionally, we plan to launch Fly E-Bike Care in the near future, a service designed to function as an insurance policy and provide customers with continuous maintenance services beyond the manufacturer and battery warranty period.

***Expand our sales network:** We plan to expand our sales network internationally. We intend to enter selected overseas markets that offer identified growth opportunities and favorable government policies, such as South America and Europe. As of July 15, 2025, we operate one store in Canada and 19 retail stores in the United States, spanning across the states of New York, Massachusetts, Maryland, Florida, Washington D.C., California and New Jersey. We also operate one online store at flyebike.com, focusing on selling E-motorcycles, E-bikes and E-scooters, serving customers in the United States.* In addition, we plan to open a second online store focusing on selling gas bikes in the future.

***Diversify our service offerings:*** We are planning to broaden our business by leveraging our existing retail stores as logistics hubs for small package delivery. We are currently trying to seek business partners, assemble a delivery team and develop an app for the delivery business.

[Emphasis added].

22. The 10-K also disclosed results of Fly-E's operations and financial conditions for the year ended March 31, 2025, specifically noting a decrease in total units sold due to recent lithium battery accidents involving E-Bikes and E-Scooters which, in turn, caused the Company's net revenues to decrease by 21% for the year. However, this disclosure never identified that the batteries involved in the incidents were Fly-E lithium batteries. Notably, Defendants report in the 10-K that its EV products are "subject to extensive environmental, safety and regulations, which include products safety and testing, as well as battery safety and disposal." Further, the 10-K notes that in January 2025 the New York City Department of Transportation chose the Company's Fly-11 PRO as the official model for eligible food delivery workers to replace their unsafe e-bikes, stating in relevant part:

**Regulatory Landscape**

7

> *We operate in an industry that is subject to extensive environmental, safety and other laws and regulations, which include products safety and testing, as well as battery safety and disposal. These requirements create additional costs and possible production delay in connection with the testing and manufacturing of our products.* We also benefit from environmental regulations in our target markets which include economic incentives to purchasers of EVs and tax credits for EV manufacturers. The Governor of New York State signed a legislative package in July 2024 aimed at raising awareness about the safe use of e-bikes and lithium-ion battery products, prohibiting the sale of non-compliant batteries, requiring safety protocols and training for first responders, mandating operating manuals for e-bike retailers, and improving accident reporting and registration processes for e-bikes and mopeds. *Additionally, in January 2025, the New York City Department of Transportation launched a $2 million trade-in program, allowing eligible food delivery workers to replace their unsafe e-bikes, e-mobility devices, and batteries with certified, high-quality versions. Our Fly-11 PRO was chosen for the official model of DOT and participates in this program. From January 2025 to June 2025, we participated in this program and completed the delivery of Fly-11 Pro models to our retail partner participating in the program.* While we expect relevant regulations to provide a tailwind to our growth, it is possible for other regulations to result in margin pressures.

[Emphasis added].

23.     Further, in the Company's accompanying press release on the same date, Defendant Ou touted Fly-E's positive growth prospects despite the revenue decline, stating, in pertinent part:

> Fiscal year 2025 was a pivotal year for Fly-E as we navigated a complex and evolving market landscape. *We achieved an improvement in gross margin to 41.1%, supported by cost reductions and more favorable pricing obtained from our suppliers, particularly in battery sourcing. We are positive about our growth prospects despite the dip in revenue caused by short-term external factors, as we have established solid reputation and continued to invest in marketing and product diversification.* With a focus on innovation, we now offer a broad and growing product portfolio of over 100 models across E-motorcycles, E-bikes, and E-scooters. Our rental service, which is already active in New York City , Toronto , and Los Angeles , is gaining strong traction, and we are excited to extend it to Miami and other markets in the near future.
>
> Following our successful registered direct public offering in June 2025 , we believe we are well-capitalized to invest in inventory, vehicle production, and working capital. *Looking forward, we remain focused on improving product safety, expanding our geographic reach, and investing in digital platforms such as the Go Fly app to enhance the customer experience and operational visibility. We believe our continued investment in safety, service, and innovation will prepare Fly-E for sustained long-term growth.*

(Emphasis added).

24.     The above statements in Paragraphs 20 to 23 were false and/or materially misleading. Defendants created the false impression that they possessed reliable information pertaining to the Company's projected revenue outlook and anticipated sales. In truth, Fly-E's optimistic revenue goals and demand for its EV products and services fell short of reality; the Defendants continually praised Fly-E's brand reputation in the industry, cost reductions and favorable pricing from suppliers as a key component for Fly-E's ability to grow its sales network, while simultaneously minimizing risks associated with its lithium battery, supply chain changes and the regulatory environment and possible demand fluctuations for its E-Bikes and E-Scooters.

### The Truth Emerges when Fly-E files Form NT 10-Q with the SEC

#### *August 14, 2025*

25.     On August 14, 2025, Fly-E filed with the SEC a form NT 10-Q: Notification of inability to timely file Form 10-Q for the first quarter of fiscal year 2026. The filing revealed a significant 32% decrease in Fly-E's net revenue compared to the same period in 2024. Notably, Defendants stated that the primary driver for the revenue decrease was a decline of "total units sold" as customers were less inclined to purchase E-Bikes due to an "increasing number of lithium-battery explosion incidents in New York". Although there was mention of sector wide lithium battery incidents in the 10-K filed on July 15, 2025, none were specific to Fly-E's lithium battery. Further, Defendants reiterated the fact that the EV industry is "subject to extensive environmental, safety and other laws and regulations, which include products safety and testing, as well as battery safety and disposal."

26.     The aforementioned press release, NT 10-Q SEC filing and statements made by the Individual Defendants are in direct contrast to statements they made in the Company's 10-K

Annual Report filed with the SEC on July 15, 2025. In that filing, Defendants continually praised Fly-E's brand reputation in the industry, cost reductions and favorable pricing from suppliers as a key component for Fly-E's ability to grow its sales network and improve gross margins forecasted for the fiscal year 2026, while simultaneously minimizing risks associated with supply chain changes and the regulatory environment, the potential impact of the macro environment, and possible demand fluctuations for its E-Bikes and E-Scooters.

27. Investors and analysts reacted immediately to Fly-E's revelation. The price of Fly-E's common stock declined dramatically. From a closing market price of $7.76 per share on August 14, 2025, Fly-E's stock price fell to $1.00 per share on August 15, 2025, a decline of about 87% in the span of just a single day.

## *Loss Causation and Economic Loss*

28. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Fly-E's common stock and operated as a fraud or deceit on Class Period purchasers of Fly-E's common stock by materially misleading the investing public. Later, Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Fly-E's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of Fly-E's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under federal securities laws.

29. Fly-E's stock price fell in response to the corrective event on August 14, 2025, as alleged *supra*. On August 14, 2025, Defendants disclosed information that was directly related to their prior misrepresentations and material omissions concerning the safety of Fly-E's lithium

battery which in turn took a material toll on its EV sales forecasting processes and revenue guidance.

30.     In particular, Fly-E announced a significant decrease in net revenues for the first quarter of fiscal year 2026 compared to the prior year attributing it to "recent lithium-battery accidents involving E-Bikes and E-Scooters." As a result of these lithium battery incidents and retail store closures, Defendants expect a further decrease in retail sales revenue for the Company's 2026 fiscal year.

### *Presumption of Reliance; Fraud-On-The-Market*

31.     At all relevant times, the market for Fly-E's common stock was an efficient market for the following reasons, among others:

(a)     Fly-E's common stock met the requirements for listing and was listed and actively traded on the NASDAQ during the Class Period, a highly efficient and automated market;

(b)     Fly-E communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c)     Fly-E was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d)     Unexpected material news about Fly-E was reflected in and incorporated into the Company's stock price during the Class Period.

32. As a result of the foregoing, the market for Fly-E's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in Fly-E's stock price. Under these circumstances, all purchasers of Fly-E's common stock during the Class Period suffered similar injury through their purchase of Fly-E's common stock at artificially inflated prices, and a presumption of reliance applies.

33. Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

### *No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine*

34. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint. As alleged above, Defendants' liability stems from the fact that they provided investors with growth projections while at the same time failing to maintain adequate forecasting processes. Defendants provided the public with forecasts that failed to account for this decline in sales and/or adequately disclose the fact that the Company at the current time did not have adequate forecasting processes.

35. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that

could cause actual results to differ materially from those in the purportedly forward-looking statements.

36. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Fly-E who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Fly-E's common stock during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

38. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Fly-E's common stock were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can

be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Fly-E or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of August 19, 2025, there were 18.8 million shares of the Company's common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

39. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Fly-E;

(c) whether the Individual Defendants caused Fly-E to issue false and misleading financial statements during the Class Period;

(d) whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e) whether the prices of Fly-E's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Against All Defendants for Violations of*
### *Section 10(b) and Rule 10b-5 Promulgated Thereunder*

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in

connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Fly-E common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Fly-E's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

46. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Fly-E's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

47. By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of Fly-E's internal affairs.

49.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Fly-E's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Fly-E's common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Fly-E's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

50.     During the Class Period, Fly-E's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Fly-E's common stock at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them

at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Fly-E's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Fly-E's common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

51.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### *Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act*

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Fly-E's misstatements.

55. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by Fly-E which had become materially false or misleading.

56. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Fly-E disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Fly-E to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Fly-E's common stock.

57. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause Fly-E to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58. By reason of the above conduct, the Individual Defendants and/or Fly-E are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 8, 2025

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton
33 Whitehall Street, 27th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Plaintiff Dino Kurt*