UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DINO KURT, Individually and on Behalf of All Others Similarly Situated, <br><br>                                    Plaintiff, <br><br>        v. <br><br> FLY-E GROUP, INC., ZHOU OU, and SHIWEN FENG, <br><br>                                    Defendants. | Case No.: 1:25-cv-05017-CHK <br><br> <u>CLASS ACTION</u> <br><br> MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOVANT ELLIS REINBLATT'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; AND IN OPPOSITION TO COMPETING MOTIONS |

## <u>TABLE OF CONTENTS</u>

I.     SUMMARY OF ARGUMENT ...................................................................................1

II.    ARGUMENT ...........................................................................................................3

    A.    The Fly-E Group Is an Improper Group ...................................................3

        1.    The Fly-E Group's Members Had No Pre-Litigation Relationships and Was Created by Their Lawyers (*Varghese* Factors 1 and 5) ................4

        2.    The Members of the Fly-E Group Have Had *De Minimis* Involvement in the Action and Their Purported Plans for Cooperation Are Deficient (*Varghese* Factors 2 and 3)..............................5

        3.    The Court Should Not Allow Disaggregation of the Fly-E Group.............7

    B.    Movant Reinblatt Has the Largest Financial Interest in the Relief Sought by the Class of the Remaining Movants ...................................................8

    C.    Movant Reinblatt Satisfies Rule 23 ........................................................9

III.    CONCLUSION........................................................................................................9

**TABLE OF AUTHORITIES**

CASES                                                                            PAGE(S)

*Chauhan v. Intercept Pharms.*,
    No. 21-CV-00036 (LJL), 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ........................7, 8

*Cohen v. Luckin Coffee Inc.*,
    No. 1:20-cv-01293-LJL, 2020 WL 3127808 (S.D.N.Y. June 12, 2020) ...........................5

*Evangelista v. Late Stage Asset Mgmt., LLC*,
    784 F. Supp. 3d 542 (E.D.N.Y. 2025) ..................................................................3, 4, 6, 8

*In re Fuwei Films Sec. Litig.*,
    247 F.R.D. 432 (S.D.N.Y. 2008) .........................................................................................9

*In re Petrobras Sec. Litig.*,
    104 F. Supp. 3d 618 (S.D.N.Y. 2015)............................................................................4, 7

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*,
    No. 15-CV-3599(KMW), 2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015)......................4, 6

*Jakobsen v. Aphria, Inc.*,
    No. 18 Civ. 11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ...................6, 7

*Jonathan Tan v. NIO Inc.*,
    No. 19-CV-1424(NGG)(VMS), 2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) .................2

*Kniffin v. Micron Tech., Inc.*,
    379 F. Supp. 3d 259 (S.D.N.Y. 2019)..................................................................................6

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
    275 F.R.D. 187 (S.D.N.Y. 2011) .........................................................................................6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .........................................................................................9

*Pompano Beach Police & Firefighters' Ret. Sys. v. Olo Inc.*,
    No. 22-CV-8228 (JSR), 2022 WL 17832556 (S.D.N.Y. Dec. 21, 2022) ...........................8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)..............................................................................3, 5

**STATUTES, RULES & OTHER AUTHORITIES**

15 U.S.C.

§78u-4(a)(3)(A)(i)................................................................................8

§78u-4(a)(3)(B)(iii)(I)...........................................................................2

§78u-4(a)(3)(B)(iii)(I)(cc)......................................................................9

Movant Ellis Reinblatt ("Reinblatt") respectfully submits this Memorandum of Law in further support of his motion for appointment as Lead Plaintiff and approval of selection of counsel (ECF No. 15), and in opposition to the other movants' competing motions. *See* ECF Nos. 6, 9, 10, 11, 14, 18, and 20.

## I.    SUMMARY OF ARGUMENT

Eight competing motions were filed in this Court seeking appointment as Lead Plaintiff and approval of selection of counsel in the above-captioned action (the "Action"): (i) Fly-E Investor Group, consisting of movants Fredrik Melin, Ringkallens Holding AB, Ara Ainadin Zarei, Jan Lindberg, and Helena Lindberg (the "Fly-E Group") (ECF No. 20); (ii) movants Kenneth Riisborg and Andvic Holding APS ("Riisborg and Andvic") (ECF No. 6); (iii) movant Matteo Lazzaretti ("Lazzaretti") (ECF No. 9); (iv) movant Kenneth Zalba ("Zalba") (ECF No. 11); (v) Fly-E Investor Group, consisting of movants Marina Mazzeo, Stanley Eng, and Jan Lindberg ("Fly-E Group 2") (ECF No. 14); (vi) movant Reinblatt (ECF No. 15); (vii) movants Corrado Tavelli, Kristian Wulff, Per-Olaf Keitsch and Tarun Sethi ("Tavelli, Wulff, Keitsch, and Sethi") (ECF No. 18); and (viii) Fly-E Investor Group, consisting of movants Lars Torbjörn Edgren, Magnus Nilsson, Peter Schröder, Peter Bertilson, and Curt Peter Lars Rehnborg ("Fly-E Group 3") (ECF No. 10).[1]  Each movant claims to be the "most adequate plaintiff" and should therefore lead this Action.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") establishes a rebuttable presumption that the "most adequate plaintiff" is the person that: (i) has either filed the complaint or made a motion in response to a notice; (ii) has the largest financial interest; and (iii) otherwise

---

[1] Movant Lazzaretti withdrew his motion (ECF No. 9) via notice filed on November 20, 2025 (ECF No. 22).  Investor Jan Lindberg moved as part of Fly-E Group and Fly-E Group 2 before apparently withdrawing as a member of Fly-E Group 2.  *See* Amended Motion of Fly-E Group 2 (ECF No. 21).  Movant Reinblatt opposed movants Riisborg and Andvic's motion on November 21, 2025. (ECF No. 24).

satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Movant Reinblatt has the undisputed largest financial interest in the Action of anyone moving as a single investor.  There is, however, an investor "group" that claims to have a larger loss, the law firm-created Fly-E Group.[2]  "While the language of the PSLRA permits a 'group of persons' to be appointed as lead plaintiff, it is a long-standing rule in this and other circuits that 'pastiche plaintiffs whose grouping appears to be solely the product of the litigation' are generally not suitable to serve as lead plaintiff."  *Jonathan Tan v. NIO Inc.*, No. 19-CV-1424(NGG)(VMS), 2020 WL 1031489, at *3 (E.D.N.Y. Mar. 3, 2020).[3]  The Fly-E Group is exactly the type of lawyer-driven group created solely for the purpose of this litigation that is unsuitable to serve as lead plaintiff.

In support of its motion, the Fly-E Group has put forth the sort of general boiler-plate joint declaration that courts have repeatedly explained are inadequate.  *See id.* at *4 (collecting cases). In fact, it does not appear that the members of the Fly-E Group even spoke to each other before moving jointly for lead plaintiff.  Further demonstrating the lawyer-driven nature of the group, and that the members of the group likely did not understand what they were signing up for, Jan Lindberg, a resident of Sweden, was initially a member of both the Fly-E Group and Fly-E Group 2.  Further, he executed his declarations in support of both groups ***on the very same day***, and just one day after allegedly speaking with other members of Fly-E Group 2.  Accordingly, the lawyer-created Fly-E Group is an improper lead plaintiff.

---

[2] While Fly-E Group 2 initially claimed to have larger losses than movant Reinblatt, with the removal of one of its members, Jan Lindberg, it now falls below movant Reinblatt's losses.

[3] Here, as throughout, all emphasis is deemed added and citations and footnotes are deemed omitted unless otherwise noted.

Having moved together, seemingly at the whims of their counsel, the Court should reject any attempt to disaggregate the Fly-E Group to consider its members individually. Movant Reinblatt recognizes that the Court has, at times, disaggregated groups. Here, however, the Fly-E Group did not file a motion requesting that the Court appoint an individual member as lead plaintiff as an alternative. Further, given the lack of care in its joint declaration and inclusion of a member in multiple groups, the members of the Fly-E Group have demonstrated their surrender of control to their counsel. Accordingly, the Court should reject any attempt to disaggregate the Fly-E Group. The remaining movants have smaller losses than movant Reinblatt and thus the Court should also deny their motions and appoint movant Reinblatt as Lead Plaintiff and his choice of Robbins LLP ("Robbins") as Lead Counsel and Johnson Fistel, PLLP ("Johnson Fistel") as Liaison Counsel.

## II.    ARGUMENT

### A.    The Fly-E Group Is an Improper Group

The Fly-E Group is a lawyer-driven improper aggregation of unrelated members created for the sole purpose of attempting to have the largest loss. Courts in the Second Circuit are generally skeptical of such groups. "Where a group of investors seeks appointment as lead plaintiff[,] '[t]he overarching concern is whether the related members of the group can function cohesively and effectively manage the litigation apart from their lawyers.'" *Evangelista v. Late Stage Asset Mgmt., LLC*, 784 F. Supp. 3d 542, 550-51 (E.D.N.Y. 2025). In deciding whether to allow a group to serve as lead plaintiff, courts in this circuit generally consider the five factors set forth in *Varghese v. China Shenghuo Pharm. Holdings, Inc.*:

(1) the existence of a pre-litigation relationship between group members;

(2) involvement of the group members in the litigation thus far;

(3) plans for cooperation;

(4) the sophistication of its members; and

(5) whether the members chose outside counsel, and not vice versa.

589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (the "*Varghese* Factors"); *see also Evangelista*, 784 F. Supp. 3d at 551.

"The proposed plaintiff group bears the burden of proving aggregation is appropriate." *Evangelista*, 784 F. Supp. 3d at 551.  The Fly-E Group does not come close to meeting its burden.

### 1.    The Fly-E Group's Members Had No Pre-Litigation Relationships and Was Created by Their Lawyers (*Varghese* Factors 1 and 5)

The joint declaration of the members of the Fly-E Group demonstrates that they had no pre-existing relationships.  Courts in this circuit have declined to aggregate groups of investors with little to no pre-litigation relationships.  *See Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, No. 15-CV-3599(KMW), 2015 WL 7018024, at *3 (S.D.N.Y. Nov. 12, 2015) (declining to aggregate group of unrelated investors whose only pre-litigation connection was membership in professional organization); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (finding that group with no prior relationship beyond common membership in certain professional organizations failed to establish meaningful pre-existing relationship for purposes of loss aggregation).

To start, the members of the Fly-E Group appear to have never spoken to each other.  Rather, the Fly-E Group's joint declaration merely states that the members are "aware of each other."  Joint Declaration, Ex. D, ¶7 (ECF No. 20-7).  Given that multiple members of the Fly-E Group did not sign the joint declaration until November 10, 2025, the last day to move for lead, and the failure to have a joint call, it is likely that these individuals from various areas in Sweden did not even know they were jointly moving until the last moment.

These facts show that the Fly-E Group's law firms, not the members, created the group and would control the Action if appointed, which contravenes the purpose of the PSLRA.  *See Cohen*

*v. Luckin Coffee Inc.*, No. 1:20-cv-01293-LJL, 2020 WL 3127808, at *5 (S.D.N.Y. June 12, 2020) (rejecting group with no pre-existing relationship that did not know each other before counsel introduced them); *Varghese*, 589 F. Supp. 2d at 392-93 (collecting cases denying proposed motions for lead plaintiff where the proposed group was assembled as makeshift by attorneys for purpose of amassing aggregation of investors purported to have greatest financial interest in the action). These factors weigh against appointment of the Fly-E Group.

>    **2.    The Members of the Fly-E Group Have Had *De Minimis* Involvement in the Action and Their Purported Plans for Cooperation Are Deficient (*Varghese* Factors 2 and 3)**

The joint declaration filed by the Fly-E Group further demonstrates its members' *de minimis* involvement and wholesale abdication to their lawyers. While the Fly-E Group's joint declaration contains generic assertions that it has communication procedures and each other's contact information, there is no representation that the members ever spoke to each other without the assistance of counsel. In fact, the Fly-E Group's joint declaration contains no representation that they ever discussed the matter with each other at all and merely states that its members "have discussed this case with our counsel." Joint Declaration, Ex. D, ¶7 (ECF No. 20-7). The generic assertion that the members' "shared desire to achieve the best possible result for the Class" is the same that any member of the class could make. *Id.*, ¶8. There is no evidence demonstrating that the members of the Fly-E Group have any substantive plans for cooperation or how these unrelated movants, scattered across Sweden, would cooperate in decision-making and act as a cohesive group in this American litigation without deferring completely to their American counsel.

The Fly-E Group's conclusory assertions "are precisely the types of statements that courts in this circuit have rejected as insufficient proof that a group of unrelated investors will be able to effectively manage the litigation." *Int'l Union of Operating Engineers*, 2015 WL 7018024, at *4; *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92

(S.D.N.Y. 2011) ("[A]lthough they have submitted a joint declaration stating that they have discussed 'protocols for managing the litigation' and 'have implemented communication procedures to enable [them] to confer via phone and/or email,' these conclusory assurances do not satisfy this Court that the Funds Group will be able to effectively manage this litigation."); *Jakobsen v. Aphria, Inc.*, No. 18 Civ. 11376 (GBD), 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019). In *Jakobsen*, the court found that the assertion in the group's joint declaration that the group "***discussed further on a conference call the respective responsibilities of counsel and the lead plaintiff, including a protocol for maintaining in regular contact with each other and with counsel to ensure that the group incorporates an effective and efficient method of decision-making during the course of the litigation***" to be "vague" and "conclusory," and rejected the group. *Id.* Yet, the movants' conference call in *Jakobsen* that the court found inadequate is more than the Fly-E Group was able to muster here.

Similarly, the court recently explained that the Fly-E Group's "'[v]ague discussions of general communication protocols ... do little to show the group['s] involvement in the litigation.'" *Evangelista*, 784 F. Supp. 3d at 551 (quoting *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019)). In *Evangelista*, the court pointed out that though the joint declaration there stated group members "have discussed the requirements and responsibilities of being lead plaintiff with counsel and understand that it is [their] responsibility to keep informed regarding the status and progress of this action, there is no evidence that the three members have actually discussed the instant litigation with each other or have had anything other than cursory involvement in the case." *Id.* (internal quotations omitted). These generic statements that the court found lacking in *Evangelista* are repeated nearly verbatim in the Fly-E Group's joint declaration. *See, e.g.*, Joint Declaration, Ex D., ¶1 (ECF No. 20-7) ("We are informed of and understand the requirements and duties imposed by the PSLRA."). The court in *Evangelista* also pointed out that the joint

declaration did not state whether the group chose its counsel and not vice versa. *Id.*at 552. The same is true here, though it is obvious from the joint declaration that it is their counsel that selected the members and molded them into a group.

The Fly-E Group's joint declaration fails to satisfy the *Varghese* Factors even before considering another fatal flaw, member Jan Lindberg supposedly meeting with another group (which is more than he did here) and moving for lead with that group at the same time as the Fly-E Group. Nowhere could it be clearer that a group would not adequately oversee its lawyers and did not understand its role than when one of its members is trying to serve on two different competing movant groups. Accordingly, the *Varghese* Factors weigh against appointing the Fly-E Group.

### 3.    The Court Should Not Allow Disaggregation of the Fly-E Group

The Court should decline to allow the members of the Fly-E Group to disaggregate and move individually. Movants made no separate motions to be considered individually as lead plaintiff, so any informal request to do so from this point forward would be procedurally improper. *Chauhan v. Intercept Pharms.*, No. 21-CV-00036 (LJL), 2021 WL 235890, at *6 (S.D.N.Y. Jan. 25, 2021) ("The PSLRA requires a purported class member who wishes to be considered for the position of lead plaintiff to make a motion, and to make it within the sixty-day window. Neither [member of the group] moved to be considered individually as an alternative if their group was rejected, which they should have done if they wished to be considered individually and which would have permitted orderly consideration of their applications viewed individually."); *Petrobras*, 104 F. Supp. 3d at 624 n.4 (declining to disaggregate a group because at "no time [did the members of the group seek] to serve as individual lead plaintiff"); *Jakobsen*, 2019 WL 1522598, at *4 n.3 ("There are no separate motions to appoint any member of the [group] as lead plaintiff on an individual basis. As such, this Court does not consider whether each individual

member of the [group] could be appointed as lead plaintiff.").

Movant Reinblatt recognizes that some decisions in this circuit have allowed disaggregation. *See, e.g.*, *Evangelista*, 784 F. Supp. 3d at 552-53. However, in those circumstances the movants normally move separately in the alternative, which the members of the Fly-E Group failed to do here.[4]

Finally, the lawyer-driven construction of the Fly-E Group makes it an improper movant unable to satisfy the requirements of Rule 23. In addition to the traditional factors of adequacy under Rule 23, in a putative PSLRA class action, courts seek to assess whether the plaintiff can "act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price." *Pompano Beach Police & Firefighters' Ret. Sys. v. Olo Inc.*, No. 22-CV-8228 (JSR), 2022 WL 17832556, at *2 (S.D.N.Y. Dec. 21, 2022). The Fly-E Group's overlapping and then-shifting membership, plus the group's failure to even participate in, let alone convene, a joint phone call, demonstrate that this group is not and does not "act like a 'real' client." *Id.*

**B.    Movant Reinblatt Has the Largest Financial Interest in the Relief Sought by the Class of the Remaining Movants**

Movant Reinblatt is the presumptive lead plaintiff due to having the largest financial interest of the remaining movants as shown by the following table:

| Movant | Total Loss |
|---|---|
| Reinblatt | $694,862.28 |
| Fly-E Group 2 | $659,429.14 |
| Fly-E Group 3 | $587,686.00 |
| Tavelli, Wulff, Keitsch, and Sethi | $545,482.96 |

---

[4] In *Evangelista*, the improper group's members requested the court consider them individually in their opposition motion. *Id.*, n.7. Movant Reinblatt respectfully posits that this approach runs afoul of the PSLRA's requirement that any person move sixty days after notice is issued, as explained by the court in *Intercept Pharms.*, 2021 WL 235890, at *6; *see also* 15 U.S.C. §78u-4(a)(3)(A)(i).

| Riisborg and Andvic | $216,182.23 |
| Zalba | $87,474.07 |

**C.    Movant Reinblatt Satisfies Rule 23**

Pursuant to the PSLRA, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  At this stage, a lead plaintiff movant need only make a preliminary showing that he meets the adequacy and typicality requirements under Rule 23.  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008) ("At this point, a prospective lead plaintiff need only make a preliminary, *prima facie* showing that his or her claims satisfy the requirements of Rule 23."). Here, movant Reinblatt satisfies both requirements, triggering the statutory presumption of lead plaintiff in his favor.

**III.    CONCLUSION**

Based on the foregoing, movant Reinblatt respectfully requests that the Court grant his motion appointing him as Lead Plaintiff, approve his selection of Robbins as Lead Counsel and Johnson Fistel as Liaison Counsel for the class, and grant such other relief as the Court may deem just and proper.

Dated: November 24, 2025

Respectfully submitted,

JOHNSON FISTEL, PLLP

/s/*Ralph M. Stone*

RALPH M. STONE
620 Fifth Avenue, 2nd Floor
New York, NY 10020
Telephone: (212) 292-5690
Facsimile: (619) 363-8326
E-mail: ralphs@johnsonfistel.com

*Counsel for Movant Ellis Reinblatt and*
*[Proposed] Liaison Counsel*

ROBBINS LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
          soddo@robbinsllp.com

*Counsel for Movant Ellis Reinblatt and*
*[Proposed] Lead Counsel*

1711544

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel for Movant Ellis Reinblatt certifies that this brief contains 2,826

words, which complies with the word limit of L.R. 7.1(c).

Executed November 24, 2025.

/s/*Ralph M. Stone*
RALPH M. STONE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 24, 2025, I caused the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Court's electronic mail notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed November 24, 2025.

/s/ *Ralph M. Stone*
RALPH M. STONE