**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DINO KURT, Individually and on Behalf of All
Others Similarly Situated,

        Plaintiff,

v.

FLY-E GROUP, INC., ZHOU OU, and
SHIWEN FENG,

        Defendants.

Case No.: 1:25-cv-05017-CHK

Hon. Clay H. Kaminsky

**THE FLY-E INVESTOR GROUP'S OPPOSITION TO COMPETING MOTIONS FOR
APPOINTMENT AS CO-LEAD PLAINTIFFS AND**
<u>**APPROVAL OF SELECTION OF COUNSEL**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 4

    I.     THE PROCESS FOR APPOINTING A LEAD PLAINTIFF UNDER THE PSLRA. ... 4

    II.    FINANCIAL INTEREST IS MEASURED USING FOUR FACTORS WITH AN EMPHASIS ON RECOVERABLE LOSSES IN THE LITIGATION ................................... 5

    III.   MS. MAZZEO AND MR. ENG ARE THE "MOST ADEQUATE PLAINTIFF" BECAUSE MR. WEEKS DOES NOT MEET THE RULE 23 REQUIREMENTS ............... 6

    IV.   THE COURT SHOULD APPOINT MS. MAZZEO AND MR. ENG AS THE CO-LEAD PLAINTIFFS. ........................................................................................................ 11

CONCLUSION ...................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.*
 No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801 (S.D. Tex. Jan. 22, 2018).........................3

*Barnet v. Elan Corp.,*
 236 F.R.D. 158 (S.D.N.Y. 2005) ...............................................................................................3

*Bhojwani v. Pistiolis,*
 2007 U.S. Dist. LEXIS 52139 (S.D.N.Y. June 26, 2007)...........................................................3

*Burnham v. Qutoutiao Inc.,*
 No. 20-CV-6707 (SHS), 2020 U.S. Dist. LEXIS 206752 (S.D.N.Y. Nov. 4, 2020).............. 12

*In re Cavanaugh,*
 306 F.3d 726 (9th Cir. 2002) ..............................................................................................5, 15

*China Agritech, Inc. v. Resh,*
 138 S. Ct. 1800 (2018)..............................................................................................................11

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.,*
 269 F.R.D. 291 (S.D.N.Y. 2010) ..............................................................................................12

*In re Donnkenny Inc. Secs. Litig.,*
 171 F.R.D. 156 (S.D.N.Y. 1997) .........................................................................................8, 10

*In re Doral Financial Corp. Sec. Litig.,*
 414 F. Supp. 2d 398 (S.D.N.Y. 2006).........................................................................................3

*In re Drexel Burnham Lambert Grp., Inc.*
 960 F.2d 285 (2d Cir. 1992)......................................................................................................11

*Elstein v. Net1 UEPS Techs., Inc.,*
 2014 U.S. Dist. LEXIS 100574 (S.D.N.Y. July 23, 2014) ........................................................8

*Foley v. Transocean Ltd.,*
 272 F.R.D. 126 (S.D.N.Y. 2011) ..............................................................................................12

*Francisco v. Abengoa, S.A.,*
 No. 15 Civ. 6279 (ER), 2016 U.S. Dist. LEXIS 68145 (S.D.N.Y. May 24, 2016) ..................6

*In re Fuwei Films Sec. Litig.,*
 247 F.R.D. 432 (S.D.N.Y 2008) .................................................................................................6

*Glauser v. EVCI Career Colleges Holding Corp.,*
 236 F.R.D. 184 (S.D.N.Y. 2006) ...............................................................................................7

*Glavan v. Revolution Lighting Techs., Inc.,*
   No. 19-CV-0908(JPO), 2019 U.S. Dist. LEXIS 125960 (S.D.N.Y. July 29, 2019)............. 1, 6

*Goldberger v. PXRE Grp., Ltd.,*
   No. 06-CV-3410 (KMK), 2007 U.S. Dist. LEXIS 23925 (S.D.N.Y. Mar. 30, 2007) ............ 10

*Hansen v. Ferrellgas Partners, L.P.,*
   No. 06-7840, 2017 U.S. Dist. LEXIS 8145 (S.D.N.Y. Jan. 19, 2017) .................................. 11

*Jiehua Huang v. Airmedia Grp., Inc.,*
   No. 1:15-CV-4966 (ALC), 2015 U.S. Dist. LEXIS 178083 (S.D.N.Y. Nov. 10, 2015) ........ 15

*Kasilingam v. Tilray, Inc.,*
   1:20-CV-03459-PAC, 2020 U.S. Dist. LEXIS 140885 (S.D.N.Y. Aug. 6, 2020).................. 14

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015)..................................................................................... 9

*Kuriakose v. Fed. Home Loan Mortg. Co.,*
   No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008)............... 12

*Lax* v. *First Merchants Acceptance Corp.*,
   No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .............................. 1, 5

*Mustafin v. Greensky, Inc.*,
   No. 18-11071, 2019 U.S. Dist. LEXIS 55296 (S.D.N.Y. Mar. 29, 2019) ............................. 11

*In re Olsten Corp. Securities Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..................................................................................... 1, 5

*Omdahl v. Farfetch Ltd.,*
   No. 19-CV-8657 (AJN), 2020 U.S. Dist. LEXIS 103935 (S.D.N.Y. June 10, 2020) ............ 15

*Peters v. Jinkosolar Holding Co.,*
   012 U.S. Dist. LEXIS 38489 (S.D.N.Y. Mar. 19, 2012) ......................................................... 7

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015)..................................................................................... 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) .......................................................................................... 15

*In re Razorfish, Inc. Sec. Litig.*,
   143 F. Supp. 2d 304 (S.D.N.Y. 2001)........................................................................... 7, 8, 11

*Reimer v. Ambac Fin. Grp., Inc.*,
   2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008)....................................................... 10

iv

*Reitan v. China Mobile Games & Ent. Group, Ltd.,*
  68 F. Supp. 3d 390 (S.D.N.Y. 2014)................................................................................. 12

*Silverberg v. Dryships Inc.,*
  2018 U.S. Dist. LEXIS 225563 (E.D.N.Y. Aug. 21, 2018)..................................................... 11

*Sofran v. Labranche & Co.,*
  220 F.R.D. 398 (S.D.N.Y. 2004) ...................................................................................... 14

*In re Tarragon Corp. Sec. Litig.,*
  2007 U.S. Dist. LEXIS 91418 (S.D.N.Y. Dec. 6, 2007) ................................................ 7, 9, 10

*In re Telxon Corp. Sec. Litig.*
  67 F. Supp. 2d 803 (N.D. Ohio 1999)............................................................................ 10, 11

*Varghese v. China Shenghuo Pharm. Holdings, Inc.,*
  589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................ 7, 8, 9, 11

*In re Veeco Instruments, Inc.,*
  233 F.R.D. 330 (S.D.N.Y. 2005) ...................................................................................... 1, 8

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ......................................................................................... 3

*Xianglin Shi v. SINA Corp.,*
  2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005) ....................................................... 10

**Statutes**

15 U.S.C. §78u-4 .................................................................................................... *passim*

v

## PRELIMINARY STATEMENT

The Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §78u-4) (the "PSLRA"), sets forth a clear directive in terms of appointing lead plaintiffs to serve in securities class actions. It instructs courts to appoint as "lead plaintiff" the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). That person or entity is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u–4(a)(3)(B)(iii)(I). Marina Mazzeo and Stanley Eng are the movants with the largest financial interest in the outcome of the litigation who **also** satisfy Rule 23's typicality and adequacy requirements. Therefore, the Court should grant Ms. Mazzeo and Mr. Eng's motion and approve them and their chosen counsel as lead plaintiffs and lead counsel, respectively.

Courts in this District typically evaluate financial interests using the following four factors: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period...; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period" (the "*Olsten/Lax* factors"). *Glavan v. Revolution Lighting Techs., Inc.,* No. 19-CV-0908(JPO), 2019 U.S. Dist. LEXIS 125960, at *8 (S.D.N.Y. July 29, 2019) (quoting *In re Veeco Instruments, Inc.,* 233 F.R.D. 330, 332 (S.D.N.Y. 2005); *see also Lax* v. *First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6, 1997); *In re Olsten Corp. Securities Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998). Under these factors, only one other movant has a larger "financial interest" in the litigation than Ms. Mazzeo and Mr. Eng:

| Movant | Gross Shares | Net Shares | Net Funds Expended | Recoverable Losses |
|---|---|---|---|---|
| Fredrik Melin, Ringkallens Holding AB, Ara Ainadin Zarei, and Jan and Helena Lindberg | 281,089 | 270,619 | $2,008,807.58 | $1,749,745.00 |
| Marina Mazzeo and Stanley Eng[1] | 114,750 | 114,750 | $861,717.50 | $785,112.95 |
| Ellis Reinblatt | 112,426 | 93,396 | $684,865.40 | $617,420.82 |
| Lars Torbjörn Edgren, Magnus Nilsson, Peter Schröder, Peter Bertilson, and Curt Peter Lars Rehnborg | 92,935 | 85,981 | $638,715.56 | $587,686.00 |
| Corrado Tavelli, Kristian Wulff, Per-Olaf Keitsch and Tarun Sethi | 80,480 | 80,480 | $582,882.46 | $545,482.96 |
| Kenneth Riisborg and Andvic Holding ApS | 46,579 | 36,046 | $241,209.67 | $216,182.23 |
| ~~Matteo Lazzaretti[2]~~ | ~~27,203~~ | ~~23,380~~ | ~~$159,605.97~~ | ~~$143,371.14~~ |
| Kenneth Zalba | 17,015 | 17,015 | $99,054.65 | $87,474.07 |

*See* ECF Nos. 8-3; 9-6; 10-4; 13-2; 14-5; 17-3; 19-3; and 20-4.

Fredrik Melin, Ringkallens Holding AB, Ara Ainadin Zarei, and Jan and Helena Lindberg (the "Melin Group"), the only movant group with a larger financial interest in the litigation than Ms. Mazzeo and Mr. Eng, does not meet Rule 23's adequacy requirements. This is because the Melin Group is comprised of five distinct individuals and one company. Their losses should not be aggregated to determine their losses because most of them do not have "a pre-litigation relationship based on more than the losing investments at issue in this case" and their group is "too

---

[1] Ms. Mazzeo and Mr. Eng submit with this opposition brief an amended certification executed by Ms. Mazzeo and an updated group loss chart. The attached account for trades made by Ms. Mazzeo in Fly-E Group, Inc. ("Fly-E") prior to the market opening on August 15th, 2025.

[2] On November 20, 2025, movant Matteo Lazzaretti filed a notice of non-opposition. *See* ECF No. 22.

large and unwieldy to serve as a cohesive group;" therefore they cannot adequately represent the Class. *See Abouzied v. Applied Optoelectronics, Inc.,* No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16801, at \*9-16 (S.D. Tex. Jan. 22, 2018); *Bhojwani v. Pistiolis,* 2007 U.S. Dist. LEXIS 52139, at \*21-22 (S.D.N.Y. June 26, 2007) ("In the circumstance of the instant case, the Court is not persuaded that the aggregation of holdings, by unrelated group members [...] will advance PSLRA's objective."); *In re Doral Financial Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 401 (S.D.N.Y. 2006) (rejecting proposed groups because "[n]othing before this Court indicates that these random cumulations of plaintiffs are anything more than an effort to achieve the highest possible 'financial interest' figure to be chosen"); *Barnet v. Elan Corp., PLC.*, 236 F.R.D. 158, 161-62 (S.D.N.Y. 2005) (collecting cases) ("the aggregation of large, unrelated "groups" of investors defeats the purpose of choosing a lead plaintiff."); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (collecting cases) ("There are, however, outer limits to the number of plaintiffs allowed to proceed as lead plaintiff, in that there exists a point at which the Act's express purpose of placing the control of securities class actions with a small and finite number of plaintiffs (as opposed to plaintiffs' counsel) becomes wholly undermined by the sheer size of the proposed plaintiff group."). The Melin Group has further shown their inadequacy through their group member's, Jan Lindberg, actions to sign certifications and move as a member in two separate groups before realizing this error.

Ms. Mazzeo and Mr. Eng are the movants with the next "largest financial interest" in the litigation once the Melin Group is eliminated. With $785,112.95 of potentially recoverable losses, Ms. Mazzeo and Mr. Eng, have a strong incentive to vigorously represent the class's claims. In addition to having the "largest financial interest" in the Action, Ms. Mazzeo and Mr. Eng, make the requisite prima facie showing of adequacy and typicality under Rule 23 for the purposes of

triggering the PSLRA's lead plaintiff presumption. Ms. Mazzeo and Mr. Eng, have submitted a joint declaration in support of their motion outlining their plans for serving as co-lead plaintiffs and confirming their intent to obtain the largest possible recovery for themselves and the class. *See* Joint Declaration, ECF No. 14-7. Ms. Mazzeo and Mr. Eng, are a group of two sophisticated individual investors with nearly 40 years of investing experience. *Id.* at ¶3-4. The losses they suffered are directly attributable to their purchases of Fly-E securities on the open market and the damages they sustained as a result thereof. Thus, their claims are exactly the same as every other member of the class. Ms. Mazzeo and Mr. Eng's evidentiary showing on the motion is sufficient to trigger the PSLRA's presumption of "most adequate plaintiff" to serve as co-lead plaintiffs and, as demonstrated below, none of the other movants will be able to rebut that presumption. Accordingly, Ms. Mazzeo and Mr. Eng respectfully request that their motion be granted in its entirety.

## **ARGUMENT**

### I.    **THE PROCESS FOR APPOINTING A LEAD PLAINTIFF UNDER THE PSLRA.**

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as lead plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. §78u-4(a)(3)(A)(i). From the movants that file timely motions, the presumptive "most adequate plaintiff" is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

4

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

Importantly, and relevant to the motion at bar, if the movant with the "largest financial interest" either fails to "satisf[y] the requirements of Rule 23" or is otherwise at risk of being "subject to a unique defense[]" such that the presumption of "most adequate plaintiff" is rebutted, then that movant is disqualified and the analysis is performed again beginning with the movant with the next "largest financial interest" in the litigation. *See In re Cavanaugh*, 306 F.3d 726, 727 (9th Cir. 2002) ("The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

## II. FINANCIAL INTEREST IS MEASURED USING FOUR FACTORS WITH AN EMPHASIS ON RECOVERABLE LOSSES IN THE LITIGATION.

When deciding among competing lead plaintiff movants, the Court must first determine which investor possesses the largest financial interest and then decide whether they have met the adequacy and typicality requirements of Rule 23. 15 U.S.C. §78u-4 (a)(3)(B)(iii)(I)(bb). In accordance with *In re Olsten Corp. Securities Litig.* and *Lax v. First Merchants Acceptance Corp.*, *supra*, "[c]ourts in this Circuit have traditionally examined . . . (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period . . . ; (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the

5

class period". *Glavan*, 2019 U.S. Dist. LEXIS 125960, at *8; *In re Fuwei Films Sec. Litig.,* 247

F.R.D. 432, 436-37 (S.D.N.Y 2008) ("In the absence of explicit guidance, many courts, including

courts in this District and in the Eastern District of New York, have adopted a four-factor test first

promulgated in *Lax*"). "[C]ourts have consistently held that… the magnitude of the loss suffered,

is most significant." *Francisco v. Abengoa, S.A.*, No. 15 Civ. 6279 (ER), 2016 U.S. Dist. LEXIS

68145, at *14 (S.D.N.Y. May 24, 2016).

Using these four factors, Ms. Mazzeo and Mr. Eng have the largest financial interest in the

litigation after the Melin Group, as shown in the following table:

| Movant | Gross Shares | Net Shares | Net Funds Expended | Recoverable Losses |
|---|---|---|---|---|
| Fredrik Melin, Ringkallens Holding AB, Ara Ainadin Zarei, and Jan and Helena Lindberg | 281,089 | 270,619 | $2,008,807.58 | $1,749,745.00 |
| Marina Mazzeo and Stanley Eng | 114,750 | 114,750 | $861,717.50 | $785,112.95 |
| Ellis Reinblatt | 112,426 | 93,396 | $684,865.40 | $617,420.82 |
| Lars Torbjörn Edgren, Magnus Nilsson, Peter Schröder, Peter Bertilson, and Curt Peter Lars Rehnborg | 92,935 | 85,981 | $638,715.56 | $587,686.00 |
| Corrado Tavelli, Kristian Wulff, Per-Olaf Keitsch and Tarun Sethi | 80,480 | 80,480 | $582,882.46 | $545,482.96 |
| Kenneth Riisborg and Andvic Holding ApS | 46,579 | 36,046 | $241,209.67 | $216,182.23 |
| ~~Matteo Lazzaretti~~ | ~~27,203~~ | ~~23,380~~ | ~~$159,605.97~~ | ~~$143,371.14~~ |
| Kenneth Zalba | 17,015 | 17,015 | $99,054.65 | $87,474.07 |

*See* ECF Nos. 8-3; 9-6; 10-4; 13-2; 14-5; 17-3; 19-3; and 20-4.

**III.    MS. MAZZEO AND MR. ENG ARE THE "MOST ADEQUATE PLAINTIFF"**

**BECAUSE MR. WEEKS DOES NOT MEET THE RULE 23 REQUIREMENTS.**

6

Courts in this Circuit typically perform a "case-by-case analysis" into whether an unrelated investor group "would best serve the class." *Varghese v. China Shenghuo Pharm. Holdings, Inc.,* 589 F. Supp. 2d at 392 (S.D.N.Y. 2008). In these instances, the courts look to see if the proposed group has made "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers . . . ." *Id.*; *see In re Tarragon Corp. Sec. Litig.,* 2007 U.S. Dist. LEXIS 91418, at *3 (S.D.N.Y. Dec. 6, 2007). Courts routinely evaluate the following three factors:

> (1) the size of the group; (2) the relationship between the parties; and (3) any evidence that the group was formed in bad faith (in other words, that it is a mere "artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff' . . . ."

*Peters v. Jinkosolar Holding Co.,* 2012 U.S. Dist. LEXIS 38489, at *19 (S.D.N.Y. Mar. 19, 2012) (quoting *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001)). As such, if the group cannot substantiate a "sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action" than courts in this Circuit "will not hesitate" to deny the proposed group's motion. *Varghese*, 589 F. Supp. 2d at 393. This is a threshold the Melin Group cannot surpass.

Courts are particularly "skeptical of such arrangements when they are the product of an artificial grouping designed merely to qualify as lead plaintiff under the PSLRA." *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015). Accordingly, this Circuit frequently holds that investor groups are inadequate class representatives when the group "appears to be nothing more than a lawyer-created group of unrelated investors who were cobbled together 'in the hope of thereby becoming the biggest loser for PSLRA purposes . . . .'" *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 190 (S.D.N.Y. 2006) (citing *In re Veeco Instrument Inc.*,

7

233 F.R.D. 330, 334. Courts have found that "[t]o allow [such] an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." *In re Donnkenny Inc. Secs. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) (citations omitted); *accord Elstein v. Net 1 UEPS Techs., Inc.,* 2014 U.S. Dist. LEXIS 100574, at *18 (S.D.N.Y. July 23, 2014) ("despite [investor group's] assurances that they are united in their goals and objectives and are willing and able to serve the Class, that is not enough to succeed on a lead plaintiff motion"); *Razorfish*, 143 F. Supp. 2d at 308-09 ("To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation."). In fact, this type of "lawyer-driven litigation" was one of the "principal legislative purposes" Congress sought to address when it enacted the PSLRA. *In re Donnkenny Inc.*, 171 F.R.D. at 158-59.

While courts permit unrelated investors to form a group for appointment as lead plaintiff on a case-by-case basis, granting such requests should only be permitted "if such a grouping would best serve the class." *Varghese*, 589 F. Supp. 2d. at 392. For a movant group to be appointed as lead plaintiff, the unrelated members of the proposed movant group must proffer "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Id*. A movant-group's "evidentiary showing" must address the following factors:

> (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

8

*Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015) (McMahon, C.J.) (quoting *Varghese*, 589 F. Supp. 2d. at 392).

The Melin Group has failed to show that they can cohesively function. Jan Lindberg, one of the Melin Group members, signed certifications, declarations, and formed investor groups with two separate law firms. *See* ECF Nos. 14 and 20. Further, the members of the Melin Group have failed to proffer any evidence or explanation as to how or why the members came together or how they plan to act as a cohesive unit. They do not claim to have had any communications discussing the litigation, their objectives, or strategy for overseeing counsel as a group prior to filing their motion. *See* ECF No. 20-3, the Melin Group's Joint Declaration.

Groups of unrelated investors that do not proffer such evidence are not permissible. *See Khunt*, 102 F. Supp. at 532-34 (rejecting the appointment of an unrelated group despite the appearance of the individual members sophistication and representations regarding cooperation and a decision-making process when there was no evidence of a pre-litigation relationship or that the members chose counsel, rather than vice versa); *In re Tarragon Corp.,* 2007 U.S. Dist. LEXIS 91418, at *3 (rejecting two movant groups as they provided "no evidence that the members of these groups have ever communicated with other members of their respective group or will do so in the future" and have failed to provide any other evidentiary basis for aggregation other than that each was represented by a set of lawyers). Thus, the Melin Group is an impermissible group of unrelated investors who fail to meet the adequacy requirements under Rule 23 of the Federal Rules of Civil Procedure.

The policy underlying the enactment of the PSLRA as well as the case law in this Circuit is clear that an unrelated group of investors should not be allowed to aggregate their losses in

9

situations such as we have here. *See e.g., Goldberger v. PXRE Grp., Ltd.,* No. 06-CV-3410 (KMK), 2007 U.S. Dist. LEXIS 23925, at *13-15 (S.D.N.Y. Mar. 30, 2007) (rejecting group whose members "share[] only this lawsuit in common," has no leader of the group, and suspecting group "of disparate and apparently unrelated plaintiffs" was result of the "type of lawyer-driven action that the PSLRA eschews") (citation omitted); *In re Tarragon Corp.*, 2007 U.S. Dist. LEXIS 91418, at *5-6; *Donnkenny*. 171 F.R.D. at 157-58.

Finally, the size of the Melin Group weighs against its appointment. As it currently stands, the group is comprised of five distinct individuals and one company. In light of the fact that the majority of the group members have no pre-existing relationship as well as no plan to function as a decision-making body, the Melin Group is unsuitable to serve as lead plaintiff. *See Reimer v. Ambac Fin. Grp., Inc.*, 2008 U.S. Dist. LEXIS 38729, at *8-9 (S.D.N.Y. May 9, 2008) ("We note, however, that a group appointment may be inappropriate where the group is too large or where it has not evinced an ability (and a desire) to work collectively to manage the litigation. In other words, the group must not be so cumbersome as to deliver the control of the litigation into the hands of the lawyers." (quotations omitted)); *Xianglin Shi v. SINA Corp.,* 2005 U.S. Dist. LEXIS 13176, at *11-12 (S.D.N.Y. July 1, 2005). As there is no evidence that the Melin Group will best serve the interests of the class, it is unnecessarily subjecting the class to potential risks and costs as a result of their proposed structure. As aptly described by the court in *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803 (N.D. Ohio 1999),

> The larger the group, the less incentive any single member of the group - and certainly the group as a whole - will have to exercise any supervision or control over the litigation. In the case of a single plaintiff, the agency costs are those costs associated with the monitoring of and communication with the plaintiff's attorney by the individual plaintiff. Where more than one person is involved . . . there is an additional cost associated with intragroup communication and monitoring. The greater the number of persons comprising the group the more difficult it is for

10

those persons to communicate with each other, and to speak with a single coherent voice when making decisions about the conduct of the litigation, or, more precisely, the conduct of the attorney or attorneys in prosecuting the litigation. With the lead plaintiff group splintered and with no authoritative voice with which to exercise control over counsel, counsel is no more effectively controlled than in the pre-PSLRA era.

*Id*. at 815; *accord Razorfish*, 143 F. Supp. 2d at 309. For the aforementioned reasons, the Melin Group should be disqualified as a whole on the basis of inadequacy.

## IV. THE COURT SHOULD APPOINT MS. MAZZEO AND MR. ENG AS THE CO-LEAD PLAINTIFFS.

As demonstrated above, Ms. Mazzeo and Mr. Eng have the largest financial interest once The Melin Group is disqualified. Ms. Mazzeo and Mr. Eng are a small group of two individual investors with nearly 40 years of combined investing experience and also satisfy the typicality and adequacy requirements.[3] The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285, 291 (2d Cir. 1992). Ms. Mazzeo and Mr. Eng's claims are typical of those of other Class members because, like other Class members, they purchased Fly-E securities during the Class Period at prices artificially inflated by Defendants' misrepresentations and/or omissions that form the basis of the

---

[3] As courts within this Circuit and throughout the country have recognized, the PSLRA expressly endorses the appointment of a group of class members as lead plaintiff where, as here, the group is **small** and therefore presumably cohesive and when there has been a showing of a willingness and ability to manage the litigation. 15 U.S.C. §78u-4(a)(3)(B)(i)-(iii); *Varghese*, 589 F. Supp. 2d 388; *see also China Agritech, Inc. v. Resh,* 138 S. Ct. 1800, 1807 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups."); *Mustafin v. Greensky, Inc.*, No. 18-11071, 2019 U.S. Dist. LEXIS 55296, at *15 (S.D.N.Y. Mar. 29, 2019) ("[T]he PLSRA...expressly permits 'a group of persons' to be appointed lead plaintiff."); *Silverberg v. Dryships Inc.,* 2018 U.S. Dist. LEXIS 225563, at *9 (E.D.N.Y. Aug. 21, 2018) (group of five or fewer individuals investors is sufficiently small to be presumed cohesive); *Hansen v. Ferrellgas Partners, L.P.*, No. 06-7840, 2017 U.S. Dist. LEXIS 8145, at *12-13 (S.D.N.Y. Jan. 19, 2017) ("[A]s the statute makes clear, groups of plaintiffs are specifically permitted by the PLSRA to be appointed lead plaintiff.").

Action. *See* Memorandum in Support of Motion, *See* ECF No. 14-2. Moreover, Ms. Mazzeo and Mr. Eng's claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Kuriakose v. Fed. Home Loan Mortg. Co.,* No. 1:08-cv-7281-JFK, 2008 U.S. Dist. LEXIS 95506, at *13-14 (S.D.N.Y. Nov. 24, 2008).

To satisfy the adequacy requirement at this stage of the proceedings, Ms. Mazzeo and Mr. Eng must make a preliminary showing that "(1) [their choice of] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) [they have] a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.,* 272 F.R.D. 126, 131 (S.D.N.Y. 2011). Ms. Mazzeo and Mr. Eng have shown that their choice of counsel, Levi & Korsinsky, LLP, is qualified, experienced, and able to conduct the litigation. *See* ECF. No. 14-8 (Levi & Korsinsky firm resume). This will ensure the vigorous and adequate prosecution of the Class's claims. *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.,* 269 F.R.D. 291, 297 (S.D.N.Y. 2010). In addition, Ms. Mazzeo and Mr. Eng have no conflicts with other Class Members. ECF No. 14-2 at p. 8; *Reitan v. China Mobile Games & Ent. Group, Ltd.,* 68 F. Supp. 3d 390, 400 (S.D.N.Y. 2014). Moreover, not only is there no evidence of any antagonism between Ms. Mazzeo and Mr. Eng's interests and those of the Class, but Ms. Mazzeo and Mr. Eng have a significant and compelling interest in prosecuting the Action based on the large financial losses they have suffered as a result of the wrongful conduct alleged in the Action. *Burnham v. Qutoutiao Inc.,* No. 20-CV-6707 (SHS), 2020 U.S. Dist. LEXIS 206752, at *6-7 (S.D.N.Y. Nov. 4, 2020).

Finally, Ms. Mazzeo and Mr. Eng have further demonstrated their adequacy by submitting a joint declaration in support of their Motion. *See* Joint Declaration, ECF No. 14-7. Ms. Mazzeo currently resides in Novara, Italy and possesses a master's degree in business administration. *Id.*

12

at ¶3. She is currently employed as an auditor. *Id.* at ¶3. She considers herself to be a sophisticated investor and has been investing for 30 years. *Id.* at ¶3. Mr. Eng currently resides in Ontario, Canada. *Id.* at ¶4. He is currently retired, but prior to that, he worked at Canada Post Corp. *Id.* at ¶4. He considers himself to be a sophisticated investor and has been investing for approximately 8 years. *Id.* at ¶4.

On Friday, November 7, 2025, Ms. Mazzeo and Mr. Eng participated in a conference call with each other and counsel to discuss the allegations and the strength of the claims against defendants; a strategy for prosecuting the Action; the role of the lead plaintiff and the lead plaintiff selection and litigation process; the benefits that the class would receive from the leadership by investors like Ms. Mazzeo and Mr. Eng; a shared desire to achieve the best possible result for the class; their interests in prosecuting the case in a collaborative manner; attorney's fees; and the actions that they will take to continue to ensure that the claims will be zealously and efficiently litigated. *Id.* at ¶8. They both decided to work together in order to collaborate and exercise joint decision making. *Id.* at ¶9. They agree to work collaboratively to represent all Fly-E shareholders who suffered damages during the Class Period and to ensure that the Class achieves the largest recovery possible. *Id.* at ¶9.

Ms. Mazzeo and Mr. Eng each understand that, if appointed, they would act in the best interests of the Class during the course of the litigation to provide effective representation and to ensure that Lead Counsel effectively litigates the Action. *Id.* at ¶10. If appointed as co-lead plaintiffs, they agree to actively manage the prosecution of the Action including reviewing documents, having joint calls, discussing through email any developments, participating in discovery, and exercising joint decision-making to execute a strategy to maximize the recovery of the entire Class. *Id.* at ¶10. They are confident in their ability to reach joint decisions regarding

13

litigation matters and will use consensus decision making to maximize the recovery for the Class. *Id.* at ¶10.

Through supervision of their chosen counsel, Levi & Korsinsky, Ms. Mazzeo and Mr. Eng will ensure that the Action is prosecuted for the benefit of the Class in an efficient and effective manner. *Id.* at ¶11. They will direct counsel to prosecute the Action in such a way to achieve a fair result for all members of the Class. *Id.* at ¶11. Ms. Mazzeo and Mr. Eng have implemented communication procedures to ensure that they can quickly communicate and make decisions on short notice. *Id.* at ¶12. Ms. Mazzeo and Mr. Eng understand that they may call for a meeting or conference call at any time, including on an emergency basis if necessary. *Id.* at ¶12. They understand that meetings, conference calls, and communications may be conducted without counsel. *Id.* at ¶12. Ms. Mazzeo and Mr. Eng agree to contact one another when necessary to facilitate the best interests of the Class and to prosecute the Action, and do not foresee any problems communicating with one another or staying abreast of the progress of the litigation. *Id.* at ¶12.[4]

Ms. Mazzeo and Mr. Eng, therefore, are the movants for lead plaintiff that have the largest financial interest in the Action and otherwise meet the requirements of Rule 23. Accordingly, Ms. Mazzeo and Mr. Eng are entitled to the presumption that they are the "most adequate plaintiff[s]" and that they should be appointed as co-lead plaintiffs. 15 U.S.C §78u-4(a)(3)(B)(iii)(II). Once the presumption is triggered, the Court must focus on the presumptive lead plaintiff alone. *See Kasilingam v. Tilray, Inc.,* 1:20-CV-03459-PAC, 2020 U.S. Dist. LEXIS 140885, at *5-6 (S.D.N.Y. Aug. 6, 2020); *Sofran v. Labranche & Co.,* 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (citing

---

[4] Subsequent to their joint conference call, Mr. Lindberg abruptly abandoned them to pursue an alternate motion with another group of investors. Ms. Mazzeo and Mr. Eng decided to continue their motions notwithstanding. *See* Supplemental Declaration, ECF No. 21-3.

*In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)). This presumption may be rebutted only upon **proof** by a class member that they "will not fairly and adequately protect the interests of the class" or are "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C §78u-4(a)(3)(B)(iii)(II); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004) (internal quotation and citation omitted); *see also Omdahl v. Farfetch Ltd.,* No. 19-CV-8657 (AJN), 2020 U.S. Dist. LEXIS 103935, at *6 (S.D.N.Y. June 10, 2020) ("[t]his presumption may only be rebutted by proof that the purportedly most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'"); *Jiehua Huang v. Airmedia Grp., Inc.,* No. 1:15-CV-4966 (ALC), 2015 U.S. Dist. LEXIS 178083, at *6-7 (S.D.N.Y. Nov. 10, 2015) ("'speculative and hypothetical' allegations should not prevent the appointment of a lead plaintiff"). This the other movants have not, and cannot, do.

## CONCLUSION

For the reasons set forth above and in the opening motion papers, Ms. Mazzeo and Mr. Eng respectfully request that this Court: (1) appoint them as Co-Lead Plaintiffs for the Class in the Action; and (2) approve Levi & Korsinsky, LLP as Lead Counsel for the Class.

*[Signature on following page]*

15

Dated: November 24, 2025

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Adam M. Apton*
Adam M. Apton
33 Whitehall Street, 27th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Marina Mazzeo and
Stanley Eng, and [Proposed] Lead Counsel
for the Class*

16