UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DINO KURT, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>FLY-E GROUP, INC., ZHOU OU, and SHIWEN FENG,<br><br>        Defendants. | Case No.  1:25-cv-05017-CHK |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF THE MOTION OF THE FLY-E INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................. 6

I.  THE COURT SHOULD APPOINT THE FLY-E INVESTOR GROUP AS LEAD PLAINTIFF ............................................................................ 6

    A.  The Fly-E Investor Group Has the Largest Financial Interest of Any Competing Movant ............................................................. 7

    B.  The Fly-E Investor Group Satisfies the Applicable Requirements of Rule 23 .............................................................................. 8

II.  LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ............................................................................... 13

III.  THE COURT SHOULD DENY THE COMPETING MOTIONS ....................... 14

    A.  No Eligible Competing Movant Claims a Larger Financial Interest than the Fly-E Investor Group ........................................ 14

    B.  Reinblatt and the Edgren and Tavelli Groups Are Inadequate ................. 14

        1.  False Statements or Errors in Reinblatt and the Edgren and Tavelli Groups' Submissions Render Them Inadequate ........ 14

        2.  Reinblatt Has Not Provided Sufficient Information to the Court to Evaluate His Adequacy ........................................... 20

CONCLUSION ....................................................................................................... 22

CERTIFICATE OF WORD COUNT ...................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*,
    17-CV-10085, 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ...................................................6, 8

*Barnet v. Elan Corp., PLC*,
    236 F.R.D. 158 (S.D.N.Y. 2005) ........................................................................................3, 9

*Camp v. Qualcomm Inc.*,
    No. 18-CV-1208-AJB-BLM, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019) .............................15

*Chahal v. Credit Suisse Grp. AG*,
    18-CV-2268 *et al.*, 2018 WL 3093965 (S.D.N.Y. June 21, 2018) ...........................................7

*China Agritech, Inc. v. Resh*,
    584 U.S. 732 (2018)............................................................................................................3, 9

*Comeau v. VinFast Auto Ltd.*,
    No. 24 CV 2750 (NGG)(RML), 2024 WL 4654216 (E.D.N.Y. Nov. 1, 2024)....................2, 7

*David v. Brit. Am. Tobacco P.L.C.*,
    No. 24-CV-517 (AMD)(MMH), 2024 WL 4351311 (E.D.N.Y. Sept. 30, 2024)..............12, 13

*Dookeran v. Xunlei Ltd.*,
    Nos. 18-cv-467 (RJS) *et al.*, 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018).........................3, 9

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) .....................................................................................2, 7, 9

*Gross v. AT&T Inc.*,
    No. 19-CV-2892 (VEC), 2019 WL 7759222 (S.D.N.Y. June 24, 2019).......................5, 6, 20

*Haideri v. Jumei Int'l Holding Ltd.*,
    No. 20-CV-02751-EMC, 2020 WL 5291872 (N.D. Cal. Sept. 4, 2020) ...............................20

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
    No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017)..............4, 9, 10

*In re Boeing Co. Aircraft Sec. Litig.*,
    No. 19 CV 2394, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) .....................................21, 22

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...................................................................................................9

ii

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825 NGG RER, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ...........................2, 7

*In re HEXO Corp. Sec. Litig.*,
  No. 19 Civ. 10965 (NRB), 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) ..................... *passim*

*In re Mersho*,
  6 F.4th 891 (9th Cir. 2021) ..............................................................................................9

*In re Molson Coors Brewing Co. Sec. Litig.*,
  233 F.R.D. 147 (D. Del. 2005) .......................................................................................14

*In re Orion Sec. Litig.*,
  No. 08 CIV. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ...............................2, 8

*In re Vicuron Pharms., Inc. Sec. Litig.*,
  225 F.R.D. 421 (E.D. Pa. 2005).........................................................................................7

*Janbay v. Canadian Solar, Inc.*,
  272 F.R.D. 112 (S.D.N.Y. 2010) ....................................................................................2, 8

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ......................................................................................6, 8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015) ......................................................................................14

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015)..........................................................................11, 13

*Lako v. Loandepot, Inc.*,
  No. 8:21-CV-01449-JLS-JDE, 2022 WL 1314463 (C.D. Cal. May 2, 2022) .............15, 18, 20

*Lewitter v. Terran Orbital Corporation et al.*,
  No. 9:24-cv-81191 (S.D. Fla. Jan. 2, 2025)....................................................................4, 11

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
  No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) ...........................................10

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
  17-CV-06130 (LTS)(SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ...............................7

*Piven v. Sykes Enterprises, Inc.*,
  137 F. Supp. 2d 1295 (M.D. Fla. 2000).......................................................................21, 22

*Reitan v. China Mobile Games & Ent. Grp., Ltd.*,
  68 F. Supp. 3d 390 (S.D.N.Y. 2014)..................................................................................12

iii

*Rodriguez v. DraftKings Inc.*,
  No. 21 CIV. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ............................4, 14

*Smajlaj v. Brocade Commc'ns Sys. Inc.*,
  No. C 05-02042 CRB, 2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) ....................................21

*Takara Trust v. Molex, Inc.*,
  229 F.R.D. 577 (N.D. Ill. 2005)..................................................................................................7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008).....................................................................................14

*Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
  No. CIV A 07-177 FLW, 2007 WL 2683636 (D.N.J. Sept. 7, 2007).....................................15

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
  No. CIV.A. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ...................................4, 10

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ..........................................................................................3, 9

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

Securities Exchange Act of 1934 ..........................................................................................8, 16

**Rules**

Fed. R. Civ. P. 23................................................................................................... *passim*

Lead Plaintiff Movant the Fly-E Investor Group[1] respectfully submits this memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz as Lead Counsel (Dkt. No. 20); and in opposition to the competing motions of: (i) Lars Torbjörn Edgren ("Edgren"), Magnus Nilsson ("Nilsson"), Peter Schröder ("Schröder"), Peter Bertilson ("Bertilson"), and Curt Peter Lars Rehnborg ("Rehnborg" and, collectively with Edgren, Nilsson, Schröder, and Bertilson, the "Edgren Group") (Dkt. No. 10); (ii) Kenneth Zalba ("Zalba") (Dkt. No. 11); (iii) Ellis Reinblatt ("Reinblatt") (Dkt. No. 15); (iv) Corrado Tavelli ("Tavelli"), Kristian Wulff, Per-Olaf Keitsch, and Tarun Sethi (collectively, the "Tavelli Group") (Dkt. No. 18); and (v) Marina Mazzeo and Stanley Eng (collectively, the "Mazzeo-Eng Group") (Dkt. No. 21).[2]

## PRELIMINARY STATEMENT

This Action is a putative class action securities fraud lawsuit on behalf of investors in Fly-E securities. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as lead plaintiff the movant or group of movants with the largest financial interest in the outcome of the Action that satisfies the relevant requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is the Fly-E Investor Group, whose members incurred an aggregate loss of approximately $1.75 million in connection with their Class Period transactions in Fly-E securities. *See* Dkt. No. 20-4. Although the PSLRA does not define "financial interest," courts in

---

[1] All capitalized terms herein are defined in the Fly-E Investor Group's moving brief, or else in its opposition brief to the Riisborg-Andvic Group's competing motion (the "Riisborg-Andvic Group Motion") (Dkt. No. 6), unless otherwise indicated. *See* Dkt. Nos. 20-2, 23.

[2] Initially, one other putative Class member, Matteo Lazzaretti ("Lazzaretti"), filed a similar competing motion. *See* Dkt. No. 9. On November 20, 2025, Lazzaretti filed a notice stating his non-opposition to the competing motions. *See* Dkt. No. 22. On November 21, 2025, the Fly-E Investor Group filed its opposition to the Riisborg-Andvic Group Motion. *See* Dkt. No. 23.

1

the Second Circuit recognize that the amount of financial loss is the most significant factor to be considered. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 NGG RER, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007); *see also Comeau v. VinFast Auto Ltd.*, No. 24 CV 2750 (NGG)(RML), 2024 WL 4654216, at *2 (E.D.N.Y. Nov. 1, 2024) (equating financial interest with monetary loss). The table below sets forth the respective claimed losses of the competing movants:

| Movant | Loss |
|--------|------|
| The Fly-E Investor Group | $1,749,745 |
| The Mazzeo-Eng Group | $659,429 |
| Reinblatt | $617,421 |
| The Edgren Group | $587,686 |
| The Tavelli Group | $545,483 |
| The Riisborg-Andvic Group | $216,182 |
| Zalba | $87,474 |

As the above table reflects, the Fly-E Investor Group's loss of approximately $1.75 million dwarfs that claimed by any competing movant. Accordingly, the Fly-E Investor Group clearly possesses the largest financial interest in this Action among the competing movants.

In addition to its considerable financial interest, the Fly-E Investor Group readily satisfies Rule 23's typicality and adequacy requirements. The group's claims in this Action are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See In re Orion Sec. Litig.*, No. 08 CIV. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010). In addition, the Fly-E Investor Group's significant losses gives it a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, the group is aware of no conflict between its interests and those of the Class, and, as discussed in greater detail below, in Pomerantz, the group has selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class. *See Foley v. Transocean*

2

*Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *Dookeran v. Xunlei Ltd.*, Nos. 18-cv-467 (RJS) *et al.*, 2018 WL 1779348, at *2-3 (S.D.N.Y. Apr. 12, 2018).

Moreover, the Fly-E Investor Group is a small and cohesive group of likeminded investors, each hailing from Sweden, consisting of (i) Melin and his company Ringkallens, of which he is Managing Director and sole Owner, (ii) Zarei, and (iii) Jan and Helena Lindberg, a married couple—each of whom incurred significant losses as a result of the alleged fraud. *See* Dkt. No. 20-7 ¶¶ 2-6. Accordingly, the Fly-E Investor Group is exactly the kind of group that the PSLRA expressly permits, and that courts in the Second Circuit routinely appoint to serve as co-lead plaintiffs in securities class actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) (directing courts to appoint as lead plaintiff "the person ***or group of persons*** that" satisfies the PSLRA's relevant criteria (emphasis added)); *China Agritech, Inc. v. Resh*, 584 U.S. 732, 742 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups[.]"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiffs); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding group of seven was "presumptively the most adequate plaintiff").

Further demonstrating its adequacy, the Fly-E Investor Group has submitted with its motion papers a detailed Joint Declaration, attesting to, *inter alia*, its members' respective backgrounds and investing experience, their understanding of this litigation generally and the significance of their motion specifically, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, a meaningful explanation of their reasons for seeking appointment jointly as co-lead plaintiffs, and their readiness to collaboratively shoulder the

responsibilities of lead plaintiffs under the PSLRA, including by overseeing the efforts of counsel. *See generally* Dkt. No. 20-7.  Courts routinely appoint investor groups as lead plaintiff pursuant to the PSLRA under such circumstances.  *See, e.g.*, *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) (appointing group that submitted a declaration attesting "it is prepared to work cooperatively to serve the best interests of the class"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2014 WL 1395059, at *7-9, *12 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members).  Moreover, the Fly-E Investor Group's members have highly complementary backgrounds and experience, making them particularly well-suited to supervise the prosecution of this securities fraud class action (*see* Dkt. No. 20-7 ¶¶ 2-6), as discussed further in Section I.B., *infra*.  *See Lewitter v. Terran Orbital Corporation et al.*, No. 9:24-cv-81191 (S.D. Fla. Jan. 2, 2025), Dkt. No. 28 at 8 (appointing four-person group, in part, because of the relevant experience and backgrounds of its members).

In stark contrast to the Fly-E Investor Group's robust adequacy proffer, Reinblatt and the Edgren and Tavelli Groups are inadequate within the meaning of Rule 23 and, therefore, ineligible for appointment as Lead Plaintiff in this Action, irrespective of their claimed losses.

Reinblatt and the Edgren and Tavelli Groups' submissions in support of their respective motions for lead plaintiff appointment are laden with errors.  Courts routinely deny lead plaintiff motions under such circumstances because they raise questions regarding the movant's fitness to supervise complex securities class actions.  *See, e.g.*, *Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *6 (S.D.N.Y. Nov. 12, 2021) (finding errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative").  With respect to the Tavelli Group,

4

either its member Tavelli submitted a false Certification under penalty of perjury, or else the group submitted an incorrect loss chart exhibit in support of its motion, with Tavelli attesting under penalty of perjury in his Certification that he purchased 15,000 shares of Fly-E stock at *$70.40* per share on August 12, 2025 (*see* Dkt. No. 19-2 at *2), and the loss chart showing that Tavelli only paid *$7.40* per share for the same transaction (*see* Dkt. No. 19-3 at *2).  The Tavelli Group also failed to properly account for profits that Tavelli made selling his Fly-E stock by not subtracting those profits from his alleged loss, thereby artificially inflating the group's claimed loss by roughly 3%.  *See id.*  Similarly, the Edgren Group failed to properly account for the 15,000 shares that its member Schröder retained at the end of the Class Period, thereby artificially inflating the group's total alleged losses by over $10,000.  *See* Dkt. No. 10-4 at *2.  With respect to Reinblatt, although the PSLRA directs the use of a 90-day lookback period to calculate an average lookback price for the purpose of assigning value to certain transactions (*see* 15 U.S.C. § 78u-4(e)), Reinblatt calculated his average lookback price by "[u]sing the average closing price [of Fly-E stock] between August 15, 2025 - *October 17, 2025*"—*i.e.*, a 63-day lookback period.  Dkt. No. 17-3 at *2 (emphasis added).  Reinblatt has provided no explanation, nor is there any apparent basis under the statute or present circumstances, for using such an artificially truncated lookback period.

Reinblatt is further inadequate because he has provided *no* meaningful information about himself for the Court to consider in evaluating his adequacy, which alone is sufficient reason to deny his motion.  *See In re HEXO Corp. Sec. Litig.*, No. 19 Civ. 10965 (NRB), 2020 WL 5503634, at *1 (S.D.N.Y. Sept. 11, 2020) ("[A]mple case law supports what one would have thought is an uncontroversial point—namely, that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication."); *Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2019 WL 7759222, at *2 (S.D.N.Y. June 24, 2019)

(disqualifying movant that "lacks basic transparency" and "failed to provide [*inter alia*] . . . its experience with securities litigation").  All that Reinblatt has disclosed to the Court about himself is his name, his Class Period transactions in Fly-E securities, and his choice of counsel.  This is insufficient.  *See HEXO*, 2020 WL 5503634, at *1 (rejecting movant's claim "that a *prima facie* showing of adequacy purportedly requires nothing more than the movant's PSLRA certification, a calculation of the movant's damages, and a resume or curriculum vitae from the movant's counsel showing its experience in the field of securities litigation" (internal quotation marks omitted)).  Reinblatt has conspicuously made no proffer whatsoever regarding, *inter alia*, his investment experience, age, location, or professional or educational background, if any, much less his understanding of the responsibilities of a Lead Plaintiff under the PSLRA.  The Court should deny Reinblatt's motion because of the litany of unanswered questions he has left regarding his ability to fairly and adequately represent the Class.  *See Gross*, 2019 WL 7759222, at *2.

For the reasons set forth herein, the Fly-E Investor Group respectfully submits that the Court should grant its motion in its entirety and deny the competing motions.

## ARGUMENT

**I.    THE COURT SHOULD APPOINT THE FLY-E INVESTOR GROUP AS LEAD PLAINTIFF**

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23[.]"  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must only make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  *See Aude v. Kobe Steel, Ltd.*, 17-CV-10085, 2018 WL 1634872, at *3-4 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).  Once this presumption is triggered, it may be rebutted only upon "***proof***" that the presumptive lead

6

plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). Here, the most adequate class representative is the Fly-E Investor Group.

### A. The Fly-E Investor Group Has the Largest Financial Interest of Any Competing Movant

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person *or group of persons* that . . . has the largest financial interest in the relief sought by the class[.]" *Id.* § 78u-4(a)(3)(B)(iii)(I)(bb) (emphasis added). While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in the Second Circuit, including in this District, and around the country recognize that the amount of financial loss is the most significant factor to be considered. *See Comeau*, 2024 WL 4654216, at *2 (equating financial interest with monetary loss); *Foley*, 272 F.R.D. at 128 (same); *Chahal v. Credit Suisse Grp. AG*, 18-CV-2268 *et al.*, 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018) (same); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017) (same); *Comverse*, 2007 WL 680779, at *3 (recognizing most courts consider "approximate loss . . . to be most influential in identifying the plaintiff with the largest financial interest"); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 421, 511 (E.D. Pa. 2005) (finding financial loss is "the most significant" factor); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("[M]ost courts simply determine which potential lead plaintiff has suffered the greatest total losses.").

Under the foregoing analysis, the Fly-E Investor Group clearly has the largest financial interest in this litigation among the competing movants. As the chart at p. 2 reflects, the Fly-E Investor Group's members incurred an aggregate loss of roughly $1.75 million in connection with their Class Period transactions in Fly-E securities (*see* Dkt. No. 20-4), significantly more than any competing movant. Accordingly, the Fly-E Investor Group clearly possesses the largest financial

interest in this litigation within the meaning of the PSLRA of any movant seeking appointment as Lead Plaintiff.

### B.    The Fly-E Investor Group Satisfies the Applicable Requirements of Rule 23

In addition to possessing the largest financial interest in the outcome of this litigation, the Fly-E Investor Group has plainly made the requisite *prima facie* showing that it satisfies the typicality and adequacy requirements of Rule 23. *Aude*, 2018 WL 1634872, at *3 ("The parties moving for lead plaintiff are only required to make a prima facie showing that they meet Rule 23, and courts need only consider the typicality and adequacy requirements."); *Kaplan*, 240 F.R.D. at 94 (same).

The Fly-E Investor Group satisfies the typicality requirement of Rule 23(a)(3) because its claims are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Orion*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120.  The Fly-E Investor Group alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Fly-E, or by omitting to state material facts necessary to make the statements they did make not misleading.  In addition, the members of the Fly-E Investor Group, like other Class members, purchased Fly-E securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions that drove Fly-E's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3). *See Orion*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120.

The Fly-E Investor Group likewise satisfies the adequacy requirement of Rule 23(a)(4) because its significant losses incurred as a result of the Defendants' alleged fraud gives it a

8

sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, the group is aware of no conflict between its interests and those of the Class, and, as discussed in greater detail below, in Pomerantz, the group has selected and retained counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class. *Foley*, 272 F.R.D. at 131; *Dookeran*, 2018 WL 1779348, at *2-3.

Moreover, as a small and cohesive group of likeminded investors, the Fly-E Investor Group constitutes an appropriate movant group of the type expressly permitted by the PSLRA and routinely appointed to serve as Lead Plaintiff in PSLRA actions, including in the Second Circuit, this District specifically, and around the country. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii) (directing courts to appoint as lead plaintiff "the person ***or group of persons*** that" satisfies the PSLRA's criteria (emphasis added)); *Weltz*, 199 F.R.D. at 133 ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding group of seven was "presumptively the most adequate plaintiff"); *Elan*, 236 F.R.D. at 161-63 (holding "there can be no doubt" the PSLRA permits appointment of groups and appointing group of six as lead plaintiff, finding "six members is not too unwieldy a number to effectively manage the litigation"); *Blue Apron*, 2017 WL 6403513, at *4 (finding group of four unrelated investors is not "so large as to be unwieldly and impracticable" and appointing said group as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (citation omitted)). Indeed, in *China Agritech*, the Supreme Court affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups[.]" 584 U.S. at 742 n.3. More recently, in *In re Mersho*, the U.S. Court of Appeals for the Ninth Circuit likewise held that "the [PSLRA] expressly allows a 'group of persons' to move for appointment[.]" 6 F.4th 891, 899 (9th Cir. 2021).

Further, courts in the Second Circuit, including in this District, and around the country routinely find movant groups to be adequate where, as here, they have robustly demonstrated their cohesiveness via a detailed Joint Declaration. *See, e.g.*, *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors who submitted a declaration attesting that the group "is prepared to work cooperatively to serve the best interests of the class"); *DFC*, 2014 WL 1395059, at *7-9, *12 (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation"). Here, the Fly-E Investor Group has submitted a detailed Joint Declaration in which its members, *inter alia*:

- Provide detailed information about themselves, including their educational and professional backgrounds, ages, investment experience, and the fact that they all reside in Sweden (*see* Dkt. No. 20-7 ¶¶ 2-6);

- Explain their reasons for seeking appointment jointly as co-lead plaintiffs (*id.* ¶ 12) ("We each determined that we could ***maximize the Class's recovery by pooling our respective resources and experience*** by jointly seeking appointment as Co-Lead Plaintiffs. After reviewing the allegations pleaded in the complaint and consulting with our counsel, we each independently determined to seek joint appointment as Co-Lead Plaintiffs, and subsequently approved the filing of a joint motion seeking our appointment as Co-Lead Plaintiffs. We agree that ***our collective resources and experience, as well as our ability to engage in joint decision-making, will materially benefit and advance the interests of the Class*** in this case." (Emphases added.)); and

- Attest in detail to their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, and their readiness to undertake those responsibilities (*id.* ¶¶ 7-10, 14-16).

Indeed, the Fly-E Investor Group's leadership of this Action will plainly benefit the Class because it is comprised of sophisticated, like-minded investors with significant collective experience in business, protecting others' interests, and investing in the securities markets, all of

10

which are obviously pertinent to prosecuting a securities fraud class action like the instant Action. *See Lewitter v. Terran Orbital Corporation et al.*, No. 9:24-cv-81191 (S.D. Fla. Jan. 2, 2025), Dkt. No. 28 at 8 (appointing four-person group, in part, because of the relevant experience and backgrounds of its members).  Melin is the Managing Director and sole Owner of Ringkallens, a construction company in Sweden.  Dkt. No. 20-7 ¶¶ 2-3.  Zarei has a bachelor's degree in economics with a focus on organizational studies, serves as a Business Area Manager within the municipal sector, and is responsible for approximately a hundred employees.  *Id.* ¶ 4.  Jan and Helena Lindberg (respectively, Mr. and Mrs. Lindberg), meanwhile, are a married couple with 20 and 15 years of investment experience, respectively, and have long worked in positions where they are regularly entrusted with the lives of others.  *See id.* ¶¶ 5-6 (noting Mr. Lindberg's 30-year career as a pilot and Mrs. Lindberg's 20-year career as a nurse).  Further, each group member resides in Sweden and has each other's contact information, meaning they can easily communicate with each other, with or without counsel, as the need arises.  *See id.* ¶¶ 2-7.  In sum, the Fly-E Investor Group is comprised of sophisticated investors with complementary backgrounds and highly relevant experience that will undoubtedly benefit the Class through their joint oversight of this Action.

Anticipating a potential argument against its appointment, the fact that one member of the Fly-E Investor Group, Mr. Lindberg, filed two timely but separate motions for appointment as lead plaintiff (*see* Dkt. Nos. 14, 20) has no bearing on his, nor the group's, fitness to serve as Lead Plaintiff.  Indeed, courts in the Second Circuit, including in this District, have appointed movants as Lead Plaintiff under the PSLRA in exceedingly similar circumstances.  *See, e.g.*, *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536-37 (S.D.N.Y. 2015) (appointing movant that "admitted that he filed two competing applications [with two separate law firms] in the hopes that

11

it would increase his chance of being appointed lead plaintiff," and characterizing related arguments against his appointment as "a tempest in a teacup"); *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 400 n.6 (S.D.N.Y. 2014) (rejecting argument that duplicative lead plaintiff motions "would bar [movant] from consideration" under the PSLRA and appointing said movant as lead plaintiff); *David v. Brit. Am. Tobacco P.L.C.*, No. 24-CV-517 (AMD)(MMH), 2024 WL 4351311, at *6 (E.D.N.Y. Sept. 30, 2024) ("*BAT*") ("overlook[ing movant]'s initial error" in filing two competing lead plaintiff motions with different law firms "'in keeping with the policy intentions of the PSLRA'" because, *inter alia*, movant "acknowledged that she made a mistake" and, "upon discovering [it], she promptly directed [one firm] to withdraw one of her motions").

Here, prior to seeking appointment as a lead plaintiff, Mr. Lindberg understood and desired that, if appointed, he would be entrusted with the prosecution of this Action on behalf of the Class; that Pomerantz would file a motion seeking his appointment jointly with his co-movants on behalf of the Class; that he would take an active role in the prosecution of this case and supervise counsel; and that he would evaluate the strengths of weaknesses of the case and prospects for resolution of this matter while directing counsel. *See* Dkt. No. 20-7 ¶¶ 1, 7-10, 14-16. Further, Mr. Lindberg's decision to file two motions for his appointment as a lead plaintiff "was based on [his] unknowing belief that it was advantageous to file two such motions." Declaration of J. Alexander Hood II in Further Support of Motion ("Hood Opp. Decl."), Ex. A ¶ 2. After he was informed by his counsel on November 11, 2025—the day after the motions were filed—that "having two competing motions filed on [his] behalf by two different law firms could jeopardize [his] appointment as a Lead Plaintiff[,]" he confirmed that he "wished to proceed with Pomerantz as [his] designated Lead Counsel" and "promptly directed [Levi & Korsinsky, LLP] to withdraw the competing

motion that they filed on [his] behalf." *Id.* ¶ 3; *see also* Dkt. No. 21-2 at 1 n.1 ("[The Mazzeo-Eng Group's] amended motion reflects Mr. Jan Lindberg's withdrawal from the [Mazzeo-Eng Group."). Like the lead plaintiff movants in *Khunt* and *BAT*, "[Mr. Lindberg] admits that he made a mistake. He rectified it. He seems to care very much about obtaining relief in light of the substantial losses he . . . suffered. His interests are fully aligned with those of the class." 102 F. Supp. 3d at 537; *see also BAT*, 2024 WL 4351311, at *6; Hood Opp. Decl., Ex. A ¶ 4 ("My authorization of the filing of two separate motions reflected my strong desire to serve as a class representative in this litigation[.]"). Accordingly, although "[t]he competing movants [may] insinuate much from [Mr. Lindberg]'s mistake," this "show[s] nothing other than that [Mr. Lindberg] is an eager—if perhaps a little *over* eager—lead plaintiff" movant. *Khunt*, 102 F. Supp. 3d at 537 (emphasis in original); *see also BAT*, 2024 WL 4351311, at *6.

* * * *

Because the Fly-E Investor Group has the largest financial interest in the relief sought by the Class among those seeking appointment as Lead Plaintiff, and otherwise satisfies the applicable requirements of Rule 23, it is the presumptive "most adequate plaintiff" within the meaning of the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). To overcome the strong presumption entitling the Fly-E Investor Group to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that it is inadequate. *Id.* § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected.

## II.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class" (15 U.S.C. § 78u-

13

4(a)(3)(B)(iii)(II)(aa)).  *See Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, the Fly-E Investor Group has selected and retained Pomerantz as Lead Counsel for the Class.  As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  *See* Dkt. No. 20-8.  Thus, the Court may be assured that by approving the Fly-E Investor Group's selection of counsel, the members of the Class will receive the best legal representation available.

## III.    THE COURT SHOULD DENY THE COMPETING MOTIONS

### A.    No Eligible Competing Movant Claims a Larger Financial Interest than the Fly-E Investor Group

As discussed further in Section I.A., *supra*, no competing movant seeking appointment as Lead Plaintiff claims a larger financial interest in this Action than the Fly-E Investor Group.  This fact alone mandates denial of the competing motions.

### B.    Reinblatt and the Edgren and Tavelli Groups Are Inadequate

#### 1.    False Statements or Errors in Reinblatt and the Edgren and Tavelli Groups' Submissions Render Them Inadequate

Reinblatt and the Edgren and Tavelli Groups are inadequate under Rule 23 because their submissions in support of their respective motions are facially false and therefore defective.  Courts routinely disqualify movants from consideration for appointment as lead plaintiff because of such issues. *See, e.g.*, *Rodriguez*, 2021 WL 5282006, at *6, *9 (finding errors in movant's "submissions

14

is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy" and disqualifying said movant because, "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place"); *Camp v. Qualcomm Inc.*, No. 18-CV-1208-AJB-BLM, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (finding errors in submissions prohibit movant from satisfying Rule 23); *Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. CIV A 07-177 FLW, 2007 WL 2683636, at *7-8 n.8 (D.N.J. Sept. 7, 2007) (denying motion by movant whose certification was "plagued with misinformation"); *Lako v. Loandepot, Inc.*, No. 8:21-CV-01449-JLS-JDE, 2022 WL 1314463, at *5 (C.D. Cal. May 2, 2022) (expressing "serious concerns about [movant] . . . and its ability to protect the interests of absent class members fairly and adequately" because it "failed to select and apply a rational and consistently applied methodology for calculating its losses").

Here, there are glaring errors in the Tavelli Group's submissions. *First*, the transactions listed in Tavelli's sworn Certification—which Tavelli attested "under penalty of perjury" to being an accurate record of his Class Period transactions in Fly-E securities (Dkt. No. 19-2 at *3)— include a purchase of 15,000 shares of Fly-E stock at a purported price of *$70.40* per share on August 12, 2025. *See id.* at *2. However, Fly-E's stock only traded as high as *$7.58* per share on that date. *See Historical Data: Fly-E Group, Inc. (FLYE)*, Yahoo! Finance, https://finance.yahoo.com/quote/FLYE/history/ (last visited Nov. 24, 2025).[3] Indeed, the loss chart exhibit that the Tavelli Group submitted in support of its motion states that Tavelli purchased

---

[3] Price-per-share values appearing on the historical stock chart are adjusted for a one-for-twenty ("1:20") stock split that occurred on November 4, 2025. Accordingly, when referencing this historical stock chart, price-per-share values must be divided by twenty in order to determine the actual price at which Fly-E shares traded on any given date prior to November 4, 2025.

750 shares of Fly-E stock at $148.00 per share on August 12, 2025. *See* Dkt. No. 19-3 at *2. After adjusting for the 1:20 stock split that occurred on November 4, 2025—*i.e.*, by multiplying the number of shares purchased by twenty and dividing the value of those same shares by twenty—this translates to 15,000 shares of Fly-E stock at ***$7.40*** per share—***not*** 15,000 shares at ***$70.40*** per share as attested to under penalty of perjury in Tavelli's Certification. Either: (i) the Tavelli Group's loss chart is incorrect and Tavelli ***did*** purchase these shares at a price of $70.40 per share, as attested to in his Certification, meaning that he somehow purchased those shares at roughly ***10x*** their trading value on that date (a scenario which raises still more unanswered questions); or (ii) Tavelli's sworn statements in his Certification are false and he only purchased those shares at $7.40 per share on August 12, 2025, meaning that Tavelli submitted a false statement in his Certification under penalty of perjury. Neither scenario bodes well for the Tavelli Group's readiness to serve as a class representative in a complex securities class action.

In addition, Reinblatt and the Edgren and Tavelli Groups each failed to properly account for their losses under the Exchange Act. The Class in this litigation is defined as all investors who purchased or otherwise acquired Fly-E securities during the Class Period. *See* Dkt. No. 1 ¶ 1. Accordingly, losses under the Exchange Act in this Action are calculated with reference to three figures: (1) the amount an investor expended on shares purchased during the Class Period; (2) any profits gained from an investor's sales of the foregoing shares during the PSLRA's 90-day lookback period; and (3) the value of any shares an investor retained at the end of the Class Period—*i.e.*, the net number of shares that the investor purchased during the Class Period.

Here, the Tavelli Group overstated its losses by failing to properly account for profits that Tavelli made on his post-Class Period sales of Fly-E stock during the PSLRA's 90-day lookback period. To properly account for post-Class Period sales during the 90-day lookback period in

16

calculating an investor's financial interest, the investor must calculate the profits the investor received from these sales by determining the sale's transaction amount—*i.e.*, the number of shares sold multiplied by the price of the shares. When performing this calculation, the PSLRA requires an investor to use the higher of: (i) the actual sale price; and (ii) the average closing price from the start of the 90-day lookback period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market—in this case, on August 15, 2025. *See* 15 U.S.C. § 78u-4(e); *see also* Dkt. No. 1 ¶¶ 4-5, 25-30 (alleging Defendants' corrective disclosures on August 14, 2025—*i.e.*, the revelations of their alleged fraud—entered the market and negatively impacted Fly-E's stock price on August 15, 2025). As set forth in Tavelli's Certification and the Tavelli Group's loss chart exhibit, Tavelli sold 17,600 shares of Fly-E stock at $0.86 per share on August 15, 2025 for a profit of $15,136. *See* Dkt. No. 19-2 at *3; Dkt. No. 19-3 at *2.[4] To properly account for these sales, the Tavelli Group should have offset his alleged losses with the $15,136 in proceeds that Tavelli made on these sales, but the Tavelli Group did not do so. *See* Dkt. No. 19-3 at *2. When properly accounted for by removing the $15,136 profit from his claimed losses, Tavelli actually incurred a loss of only *$115,338*, rather than the $130,474 loss figure that the Tavelli Group calculated for Tavelli in its loss chart exhibit. *See id.* As a result of these miscalculations, the Tavelli Group overstated its total losses by roughly 3%.

The Edgren Group, too, failed to properly calculate its losses, particularly with respect to shares retained by its member Schröder. The Edgren Group failed to assign any value to

---

[4] The Tavelli Group's loss chart exhibit states that Tavelli sold 880 shares of Fly-E stock at $17.20 per share on August 15, 2025. *See* Dkt. No. 19-3 at *2. Adjusting for the 1:20 stock split that occurred on November 4, 2025, this means that Tavelli actually sold 17,600 shares of Fly-E stock at $0.86 per share on that date—which matches with the share amount and share price listed for this transaction in Tavelli's Certification. *See* Dkt. No. 19-2 at *3.

Schröder's 15,000 shares retained at the end of the Class Period, much less properly account for those retained shares by deducting the value of those retained shares from his total losses. *See* Dkt. No. 10-4 at *2. The failure is curious, given that the Edgren Group properly accounted for the shares retained by its other group members. Specifically, the Edgren Group valued Edgren's 28,648 shares retained at $19,692, valued Bertilson's 2,508 shares retained at $1,724, and valued Rehnborg's 3,500 shares retained at $2,406, in each instance by multiplying the number of shares retained by $0.6874—the average lookback price under the PSLRA—and then deducted the resulting value of those shares from these movants' respective losses. *See id.* However, the Edgren Group inexplicably valued Schröder's 15,000 shares retained at "*$0*" rather than $10,311—*i.e.*, 15,000 multiplied by the $0.6874 lookback price—resulting in no corresponding deduction to Schröder's alleged loss and artificially inflating the group's total alleged losses by the same amount. *Id.* The Edgren Group's "fail[ure] to select and apply a rational and consistently applied methodology for calculating its losses" raises "serious concerns about [the group] . . . and its ability to protect the interests of absent class members fairly and adequately." *Lako*, 2022 WL 1314463, at *5.

Reinblatt, for his part, used a patently incorrect and seemingly arbitrary average lookback price in calculating his alleged losses. The average lookback price in this Action is derived from the mean trading price of Fly-E stock over a 90-day period (*i.e.*, the 90-day lookback period) beginning on August 15, 2025—the date on which the information correcting the misstatement or omission that is the basis for this Action was disseminated to the market (*see* Dkt. No. 1 ¶¶ 4-5, 25-30). *See* 15 U.S.C. § 78u-4(e). The PSLRA specifies that "the 'mean trading price' of a security shall be an average of the daily trading price of that security, determined as of the close of the market each day during the 90-day [lookback] period[.]" *Id.* § 78u-4(e)(3). However,

18

because lead plaintiff motions were due in this Action prior to the expiration of the 90-day lookback period, each movant necessarily had to use a less-than-90-day mean trading price for purposes of determining an average lookback price to use in calculating their losses for their respective lead plaintiff motions. For example, the Fly-E Investor Group used an 85-day average lookback price of $0.6874, which is derived from the average closing prices of Fly-E stock from August 15, 2025 to November 7, 2025—the last trading day before the Fly-E Investor Group filed its motion. *See* Dkt. No. 20-4 at *2. Indeed, every movant in this Action, apart from Reinblatt, used an average lookback price ranging from roughly $0.68 to $0.69 per share. *See id.*; Dkt. No. 8-3 at *4; Dkt. No. 9-6 at *1; Dkt. No. 10-4 at *2; Dkt. No. 13-2 at *2; Dkt. No. 14-5 at *2; Dkt. No. 19-3 at *2.[5]

Here, Reinblatt used an average lookback price of ***$0.72*** per share—significantly higher than that used by every other movant. *See* Dkt. No. 17-3 at *2-4. According to the loss chart exhibit that Reinblatt submitted in support of his motion, he calculated this average lookback price by "[u]sing the average closing price [of Fly-E stock] between August 15, 2025 - ***October 17, 2025***." *Id.* (emphasis added). Reinblatt does not explain ***why*** he chose an artificially truncated lookback period for purposes of calculating an average lookback price in connection with his motion. Every other movant appears to have chosen the maximum possible lookback period for purposes of their own motions, precisely because the PSLRA sets forth a 90-day lookback period (*see* 15 U.S.C. § 78u-4(e)) and that period had not expired at the time lead plaintiff motions were due. Regardless of whether the error reflects an oversight in Reinblatt's calculations or a fundamental misunderstanding of the PSLRA's instructions, neither reflects well on Reinblatt's

---

[5] The average lookback price listed in the Tavelli Group's loss chart is $13.61344 (*see* Dkt. No. 19-3 at *2), which, when divided by twenty to account for the 1:20 stock split that occurred on November 4, 2025, becomes $0.680672.

fitness to supervise a complex securities class action like this instant Action on behalf of a Class of potentially hundreds or thousands of injured investors. *See Lako*, 2022 WL 1314463, at *5.

The Fly-E Investor Group respectfully urges the Court not to dismiss the foregoing issues in Reinblatt and the Edgren and Tavelli Groups' submissions as minor or clerical errors. This litigation is a complex securities class action, and the Court-appointed Lead Plaintiff will be required to diligently review all significant filings and supervise the efforts of counsel. Reinblatt and the Edgren and Tavelli Groups' failure to identify obvious errors with their very first submissions should not give the Court confidence that they are prepared to serve as fiduciaries on behalf of the Class.

### 2. Reinblatt Has Not Provided Sufficient Information to the Court to Evaluate His Adequacy

In addition to the error described above, which is independently fatal to Reinblatt's motion, Reinblatt is further inadequate because he has provided ***no*** meaningful information about himself for the Court to evaluate his adequacy (apart from his propensity for error). While the standard for evaluating adequacy at the lead plaintiff appointment stage is *prima facie*, courts have nevertheless denied motions by individual movants that have provided ***no*** meaningful information about themselves. Indeed, "ample case law supports what one would have thought is an uncontroversial point—namely, that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication." *HEXO*, 2020 WL 5503634, at *1; *see also Gross*, 2019 WL 7759222, at *2 (disqualifying movant that "lacks basic transparency" and "failed to provide [*inter alia*] . . . its experience with securities litigation"); *Haideri v. Jumei Int'l Holding Ltd.*, No. 20-CV-02751-EMC, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020) (disqualifying movants who "provided *no* information about themselves[,]" finding subsequent proffer in additional filings was "conclusory and problematic"

20

and reflected a "lack of involvement" in the litigation (emphasis in original)); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) (denying motion where "[t]he complete dearth of information accompanying the [movants'] lead plaintiff motion leaves the Court with virtually no basis to assess their adequacy to lead and direct litigation"); *Piven v. Sykes Enterprises, Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (finding movant inadequate to serve as lead plaintiff where it "has not proffered any information regarding its identity, resources, and experience"); *Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. C 05-02042 CRB, 2006 WL 7348107, at *11-12 (N.D. Cal. Jan. 12, 2006) (rejecting movant with the greatest financial interest after concluding that it "will not adequately represent the interests of the plaintiff class" where questions existed as to, *inter alia*, its "authority, transparency, and structure").

Here, in stark contrast to the detailed adequacy proffer that the Fly-E Investor Group made in its Joint Declaration (*see* Dkt. No. 20-7), Reinblatt has conspicuously provided *no* biographical information about himself from which the Court can gauge his adequacy to oversee the fraud claims in this Action on behalf of a Class of potentially hundreds or thousands of injured investors. All that Reinblatt has offered to the Court about himself is his name, Class Period transactions in Fly-E securities, and choice of counsel. *See generally* Dkt. Nos. 15-17. This is insufficient. *See HEXO*, 2020 WL 5503634, at *1 (rejecting movant's claim "that a *prima facie* showing of adequacy purportedly requires nothing more than the movant's PSLRA certification, a calculation of the movant's damages, and a resume or curriculum vitae from the movant's counsel showing its experience in the field of securities litigation" (internal quotation marks omitted)).

Where does Reinblatt live? What is his age? What is his occupation or educational background? What level of investment experience does he possess? Is he aware of the responsibilities of serving as a lead plaintiff under the PSLRA? What led to his decision to serve

as a lead plaintiff?  Is he aware that a motion has been filed on his behalf and its significance?

Does he understand the posture of this litigation?  Is he prepared to oversee his selected counsel to

ensure this Action's claims are prosecuted in an efficient and cost-effective manner?  The Court is

left to guess at the answers to the foregoing questions because Reinblatt simply "has not proffered

any information regarding [his] identity, resources, and experience", leaving the Court "to question

the vigor with which [Reinblatt] intends to prosecute these claims on behalf of the putative class."

*Piven*, 137 F.Supp.2d at 1305; *see also HEXO*, 2020 WL 5503634, at \*2 (disqualifying movant

that "had not provided *any* information regarding his background or investment experience in his

preliminary motion[,]" which "not only precluded the necessary inquiry into whether [he] had any

conflicts with other class members, but also caused the Court to question whether [he] would

meaningfully oversee the litigation" (emphasis in original)); *Boeing*, 2019 WL 6052399, at \*5

(denying motion where "[t]he complete dearth of information accompanying the [movants'] lead

plaintiff motion leaves the Court with virtually no basis to assess their adequacy to lead and direct

litigation").  Accordingly, Reinblatt has failed to make the necessary proffer of his adequacy to

the Court and his motion should be denied.

## CONCLUSION

For the foregoing reasons, the Fly-E Investor Group respectfully requests that the Court

issue an Order: (1) appointing the Fly-E Investor Group as Lead Plaintiff for the Class; and (2)

approving its selection of Pomerantz as Lead Counsel for the Class.

Dated:  November 24, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ J. Alexander Hood II*
J. Alexander Hood II
Jeremy A. Lieberman
James M. LoPiano

22

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com
jlopiano@pomlaw.com

*Counsel for the Fly-E Investor Group and
Proposed Lead Counsel for the Class*

KEHOE LAW FIRM, P.C.
Michael K. Yarnoff
(*pro hac vice* application forthcoming)
2001 Market Street
Suite 2500
Philadelphia, Pennsylvania 19103
Telephone: (215) 792-6676
myarnoff@kehoelawfirm.com

*Additional Counsel for the Fly-E Investor
Group*

23

**CERTIFICATE OF WORD COUNT**

The undersigned, counsel of record for the Fly-E Investor Group, certifies that this brief contains 7,369 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on November 24, 2025.

/s/ J. Alexander Hood II
J. Alexander Hood II