UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DINO KURT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FLY-E GROUP, INC., ZHOU OU, and SHIWEN FENG, <br><br> Defendants. | Case No.  1:25-cv-05017-RER-CHK |

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE
FLY-E INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL
OF LEAD COUNSEL

**TABLE OF CONTENTS**

ARGUMENT ............................................................................................................... 1

    I.      THE FLY-E INVESTOR GROUP IS AN APPPROPRIATE
           MOVANT GROUP ................................................................................. 1

    II.     FALSE STATEMENTS OR ERRORS IN REINBLATT AND
           THE MAZZEO-ENG GROUP'S SUBMISSIONS RENDER
           THEM INADEQUATE ......................................................................... 8

    III.   REINBLATT HAS STILL NOT PROVIDED SUFFICIENT
           INFORMATION TO THE COURT TO EVALUATE HIS ADEQUACY ......... 10

CONCLUSION ....................................................................................................... 10

CERTIFICATE OF WORD COUNT .......................................................................... 12

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abouzied v. Applied Optoelectronics, Inc*,
    No. 4.17-CV-2399, 2018 WL 539362 (S.D. Tex. Jan. 22, 2018) ................................................5

*Barnet v. Elan Corp., PLC*,
    236 F.R.D. 158 (S.D.N.Y. 2005) ...........................................................................................1, 6

*Chauhan v. Intercept Pharms.*,
    No. 21-CV-00036 (LJL), 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ....................................5

*China Agritech, Inc. v. Resh*,
    584 U.S. 732 (2018) ................................................................................................................1

*Cohen v. Luckin Coffee Inc.*,
    No. 1:20-CV-01293-LJL, 2020 WL 3127808 (S.D.N.Y. June 12, 2020) .................................5

*David v. Brit. Am. Tobacco P.L.C.*,
    No. 24-CV-517 (AMD)(MMH), 2024 WL 4351311 (E.D.N.Y. Sept. 30, 2024) .................6, 7

*Elstein v. Net1 UEPS Techs., Inc.*,
    No. 13 CIV. 9100 ER, 2014 WL 3687277 (S.D.N.Y. July 23, 2014) ...................................5, 8

*Evangelista v. Late Stage Asset Mgmt., LLC*,
    784 F. Supp. 3d 542 (E.D.N.Y. 2025) ....................................................................................5

*Glauser v. EVCI Ctr. Colleges Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ...........................................................................................5

*Goldberger v. PXRE Grp., Ltd.*,
    No. 06-CV-3410KMK, 2007 WL 980417 (S.D.N.Y. Mar. 30, 2007) .....................................5

*Gross v. AT&T Inc.*,
    No. 19-CV-2892 (VEC), 2019 WL 7759222 (S.D.N.Y. June 24, 2019) ...............................10

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
    No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017) .........................1

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ...................................................................................................6

*In re CMED Sec. Litig.*,
    No. 11 CIV. 9297 KBF, 2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012) ....................................8

*In re Donnkenny Inc. Sec. Litig.*,
   171 F.R.D. 156 (S.D.N.Y. 1997) ................................................................................5

*In re HEXO Corp. Sec. Litig.*,
   No. 19 Civ. 10965 (NRB), 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) ............................10

*In re Mersho*,
   6 F.4th 891 (9th Cir. 2021) ...............................................................................1, 6

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015)............................................................................5

*In re Razorfish, Inc. Sec. Litig.*,
   143 F. Supp. 2d 304 (S.D.N.Y. 2001)............................................................................5

*In re Tarragon Corp. Sec. Litig.*,
   No. 07 CIV. 7972PKC, 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007).....................................5

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999).............................................................................5

*In re Veeco Instruments, Inc.*,
   233 F.R.D. 330 (S.D.N.Y. 2005) .................................................................................5

*Int'l Union of Operating Eng'rs Loc. No. 478 Pension Fund v. FXCM Inc.*,
   No. 15-CV-3599 KMW, 2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015)..................................5

*Jakobsen v. Aphria, Inc.*,
   No. 18 CIV. 11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ..............................5

*Jonathan Tan v. NIO Inc.*,
   No. 19CV1424NGGVMS, 2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) ................................5

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015)........................................................................5, 6, 7

*Kniffin v. Micron Tech., Inc.*,
   379 F. Supp. 3d 259 (S.D.N.Y. 2019).............................................................................5

*Lako v. Loandepot, Inc.*,
   No. 8:21-CV-01449-JLS-JDE, 2022 WL 1314463 (C.D. Cal. May 2, 2022) ..........................8

*Peters v. Jinkosolar Holding Co.*,
   No. 11 CIV. 7133 JPO, 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012).....................................4

*Pipefitters Loc. No. 636 Defined Ben. Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) .................................................................................5

*Reimer v. Ambac Fin. Grp., Inc.*,
No. 08 CIV. 1273(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ....................................6

*Rodriguez v. DraftKings Inc.*,
No. 21 CIV. 5739 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) .................................8

*Rosian v. Magnum Hunter Res. Corp.*,
No. 13 CIV. 2668 KBF, 2013 WL 5526323 (S.D.N.Y. Oct. 7, 2013) .....................................8

*Silverberg v. DryShips Inc.*,
No. 17CV4547SJFARL, 2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) ...............................4

*Tsirekidze v. Syntax-Brillian Corp.*,
No. CV-07-2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) .....................................................7

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008) ..................................................................................2, 5

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) .........................................................................................1, 6

*Xianglin Shi v. Sina Corp.*,
No. 05 CIV. 2154 (NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005) ..................................5

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................................8

Private Securities Litigation Reform Act of 1995 .................................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................................8, 9

Lead Plaintiff Movant the Fly-E Investor Group[1] respectfully submits this reply memorandum of law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Pomerantz as Lead Counsel (Dkt. No. 20).

## ARGUMENT

### I.    THE FLY-E INVESTOR GROUP IS AN APPPROPRIATE MOVANT GROUP

Contrary to the competing movants' assertions (*see* Dkt. No. 25 at 2-8; Dkt. No. 26 at 3-7; Dkt. No. 27 at 2-4, 7-11), the Fly-E Investor Group, which claims the largest loss in this Action (approximately ***$1.75 million*** (*see* Dkt. No. 20-4)) by an overwhelming margin—indeed, ***more than $1 million larger*** than that incurred by any competing movant—is precisely the type of group that courts in the Second Circuit have routinely appointed to serve as Lead Plaintiff in PSLRA actions. *See Weltz v. Lee*, 199 F.R.D. 129, 133-34 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and appointing seven-member group); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162-63 (S.D.N.Y. 2005) ("there can be no doubt" that the PSLRA permits appointment of groups and appointing six-member group). Indeed, "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups[.]" *China Agritech, Inc. v. Resh*, 584 U.S. 732, 742 n.3 (2018). More recently, in *In re Mersho*, the U.S. Court of Appeals for the Ninth Circuit likewise held that "the [PSLRA] expressly allows a 'group of persons' to move for appointment[.]" 6 F.4th 891, 899 (9th Cir. 2021). This is especially true where, as here, the group has robustly demonstrated its cohesiveness via a detailed Joint Declaration. *See In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) (appointing group of four unrelated investors who

---

[1] All capitalized terms herein are defined in the Fly-E Investor Group's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 20-2, 23, 28.

1

submitted a declaration attesting that the group "is prepared to work cooperatively to serve the best interests of the class").

As discussed at length in its moving and opposition briefs, the Fly-E Investor Group is a small and cohesive group of likeminded investors who have submitted a detailed Joint Declaration that sets forth, *inter alia*, their shared understanding of their joint motion, their reasons for seeking appointment jointly as co-lead plaintiffs, and their readiness and ability to collaboratively shoulder the responsibilities of lead plaintiffs under the PSLRA, including by overseeing the efforts of counsel.  *See* Dkt. No. 20-2 at 8-10; Dkt. No. 23 at 3, 6; Dkt. No. 28 at 3-4, 9-11.  Accordingly, the Fly-E Investor Group is plainly adequate.

In arguing otherwise, the competing movants rely on the five-factor test articulated in *Varghese v. China Shenghuo Pharm. Holdings, Inc.* for evaluating a group's adequacy under the PSLRA: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa."  589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).  The foregoing factors weigh heavily in favor of finding that the Fly-E Investor Group *is* adequate.

Regarding the first factor, ***four*** of the group's five members have a pre-litigation relationship with another group member—namely, Melin with Ringkallens, and Jan Lindberg with Helena Lindberg.  *See* Dkt. No. 20-7 ¶¶ 2, 5-6.

Regarding the second factor, the Fly-E Investor Group has demonstrated a meaningful degree of involvement in the litigation to date.  Its members individually determined that they wished to seek leadership roles in this litigation, then opted to seek appointment jointly as co-lead plaintiffs after due consideration.  *See id.* ¶ 12.  The group's members exchanged contact

information and provided a detailed joint declaration attesting to their understanding of the lead plaintiff role and their readiness to shoulder it jointly. *See id.* ¶¶ 7-10, 12-16. It is unclear how the group's members could have been any more involved in the litigation than they have been thus far.

Regarding the third factor, the Fly-E Investor Group's members have, in their Joint Declaration, attested under penalty of perjury to their "shared interest in prosecuting the case in a collaborative and likeminded manner" and to their readiness to "satisfy [their] fiduciary obligations to the Class by, among other steps, conferring with each other and with [their] counsel regarding litigation strategy and other matters, attending court proceedings, depositions, any settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents." Dkt. No. 20-7 ¶¶ 8, 10. Each group member resides in Sweden and has the other members' contact information, meaning they can easily communicate with each other, with or without counsel, as the need arises. *See id.* ¶¶ 2-7. The Fly-E Investor Group's members also "agree[d] to make all efforts, in good faith, to reach consensus with respect to all litigation decisions," and agreed to a decision-making protocol in the event of disagreement. *Id.* ¶ 13 ("[W]e agree to resolve . . . disagreement[s] by a majority vote, in which each of us possesses a number of votes equal to our losses incurred in connection with our Class Period transactions in Fly-E securities, calculated in terms of U.S. dollars.").

Regarding the fourth factor, the Fly-E Investor Group's members have demonstrated their sophistication. They have attested to their professional and educational backgrounds, including their significant collective experience in business, protecting others' interests, and investing in the securities markets, as discussed more fully in their opposition brief. *See* Dkt. No. 28 at 10-11; *see also* Dkt. No. 20-7 ¶¶ 2-6.

3

Finally, with respect to the fifth factor, each of the Fly-E Investor Group's members has attested under penalty of perjury that he or she chose to work with Pomerantz, to understanding the firm's role in this litigation, and to a readiness to supervise counsel's efforts to ensure this Action is prosecuted in an efficient, cost-effective manner. *See* Dkt. No. 20-7 ¶¶ 1, 7-10, 14-16. The Joint Declaration explicitly states that the Fly-E Investor Group "selected Pomerantz to serve as Lead Counsel[.]" *Id.* ¶ 15. The competing movants have given no reason that the Court should not credit the group's attestations.

The Mazzeo-Eng Group also cites additional factors that the Court should consider in evaluating the Fly-E Investor Group's adequacy—namely "the size of the group" and "any evidence that the group was formed in bad faith[.]" Dkt. No. 27 at 7 (quoting *Peters v. Jinkosolar Holding Co.*, No. 11 CIV. 7133 JPO, 2012 WL 946875, at *7 (S.D.N.Y. Mar. 19, 2012)). Here, the Fly-E Investor Group is a small and presumptively cohesive five-member group. The Mazzeo-Eng Group acknowledges that a five-member group is presumptively cohesive in this District. *See* Dkt. No. 27 at 11 n.3 (citing *Silverberg v. DryShips Inc.*, No. 17CV4547SJFARL, 2018 WL 10669653, at *9 (E.D.N.Y. Aug. 21, 2018), for the proposition that a "group of five or fewer individual[] investors is ***sufficiently small to be presumed cohesive***" (emphasis added)). In arguing that "the size of the [Fly-E Investor] Group weighs against its appointment" (Dkt. No. 27 at 10), the Mazzeo-Eng Group miscounts the Fly-E Investor Group's members, incorrectly claiming that the Fly-E Investor Group "is comprised of ***five*** distinct individuals ***and*** one company." *Id.* at 2, 10 (emphases added). Further, there is no evidence that the Fly-E Investor Group was formed in bad faith. Again, four of the group's five members are related to another group member (*see* Dkt. No. 20-7 ¶¶ 2, 5-6), and each member attested to their belief that their

4

complementary backgrounds and experience would benefit the Class through their joint oversight of this Action (*see id.* ¶ 12).

The cases cited by the competing movants in opposition are largely distinguishable. They mostly involve cases where there was seemingly no relationship among *any* of the group's members,[2] the group was larger than the presumptively cohesive five-member limit,[3] it failed to make an evidentiary showing of cooperation or to provide a mechanism to resolve disputes,[4] its members hailed from disparate countries and time zones,[5] there was evidence and/or testimony showing that the group was formed in bad faith,[6] the group sought the appointment of multiple counsel as Co-Lead Counsel,[7] or it failed to state whether it chose its counsel and not vice versa.[8] Moreover, some of the cases cited by the competing movants ultimately resulted in the *approval*

---

[2] *See Jonathan Tan v. NIO Inc.*, No. 19CV1424NGGVMS, 2020 WL 1031489, at *4 (E.D.N.Y. Mar. 3, 2020); *Varghese*, 589 F. Supp. 2d at 394; *Pipefitters Loc. No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191–92 (S.D.N.Y. 2011); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015); *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 816 (N.D. Ohio 1999).

[3] *See Abouzied v. Applied Optoelectronics, Inc*, No. 4.17-CV-2399, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (twelve-member group); *Khunt*, 102 F. Supp. 3d at 529 (six-member group); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332 (S.D.N.Y. 2005) (nine-member group); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) (six-member group); *Goldberger v. PXRE Grp., Ltd.*, No. 06-CV-3410KMK, 2007 WL 980417, at *1 (S.D.N.Y. Mar. 30, 2007) (seven-member group); *Xianglin Shi v. Sina Corp.*, No. 05 CIV. 2154 (NRB), 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005) (seven-member group); *Telxon*, 67 F. Supp. 2d at 808 (eighteen-member group)

[4] *See Int'l Union of Operating Eng'rs Loc. No. 478 Pension Fund v. FXCM Inc.*, No. 15-CV-3599 KMW, 2015 WL 7018024, at *4 (S.D.N.Y. Nov. 12, 2015); *Cohen v. Luckin Coffee Inc.*, No. 1:20-CV-01293-LJL, 2020 WL 3127808, at *4 (S.D.N.Y. June 12, 2020); *Varghese*, 589 F. Supp. 2d at 394; *Pipefitters*, 275 F.R.D. at 191-92; *Jakobsen v. Aphria, Inc.*, No. 18 CIV. 11376 (GBD), 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019); *Chauhan v. Intercept Pharms.*, No. 21-CV-00036 (LJL), 2021 WL 235890, at *5 (S.D.N.Y. Jan. 25, 2021); *Kniffin*, 379 F. Supp. 3d at 263; *Abouzied*, 2018 WL 539362, at *5; *Elstein v. Net1 UEPS Techs., Inc.*, No. 13 CIV. 9100 ER, 2014 WL 3687277, at *4-5 (S.D.N.Y. July 23, 2014); *In re Tarragon Corp. Sec. Litig.*, No. 07 CIV. 7972PKC, 2007 WL 4302732, at *1-2 (S.D.N.Y. Dec. 6, 2007).

[5] *See Cohen*, 2020 WL 3127808, at *4.

[6] *See In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622-23 (S.D.N.Y. 2015).

[7] *See Chauhan*, 2021 WL 235890, at *5; *Glauser v. EVCI Ctr. Colleges Holding Corp.*, 236 F.R.D. 184, 190 (S.D.N.Y. 2006); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 306, 308 (S.D.N.Y. 2001); *Telxon*, 67 F. Supp. 2d at 808-09, 817.

[8] *See Evangelista v. Late Stage Asset Mgmt., LLC*, 784 F. Supp. 3d 542, 552 (E.D.N.Y. 2025).

of the group under evaluation,[9] while many others were decided pre-*Mersho*, that is, before the Ninth Circuit held that "the [PSLRA] expressly allows a 'group of persons' to move for appointment[.]"  6 F.4th at 899.

The competing movants also attack Jan Lindberg's filing of duplicative motions, arguing that his decision to do so highlights the purportedly artificial nature of the Fly-E Investor Group or else his lack of understanding of the Lead Plaintiff role.  *See* Dkt. No. 25 at 2, 7; Dkt. No. 26 at 3, 5; Dkt. No. 27 at 3, 9.  Not so.  As discussed more fully in the Fly-E Investor Group's opposition brief (*see* Dkt. No. 28 at 11-13), Mr. Lindberg's filing of duplicative motions reflected his motivation to serve as Lead Plaintiff—not his lack of understanding about the Lead Plaintiff role, nor his inability to work cohesively with his chosen group members.  *See* Dkt. No. 28-2 ¶ 4 ("My authorization of the filing of two separate motions reflected my strong desire to serve as a class representative . . . . This decision does not reflect any misunderstanding of the responsibilities of a Lead Plaintiff[.]").  This "show[s] nothing other than that [Mr. Lindberg] is an eager—if perhaps a little *over* eager—lead plaintiff."  *Khunt*, 102 F. Supp. 3d at 537 (emphasis in original); *see also David v. Brit. Am. Tobacco P.L.C.*, No. 24-CV-517 (AMD)(MMH), 2024 WL 4351311, at *6 (E.D.N.Y. Sept. 30, 2024) ("*BAT*") ("overlook[ing movant]'s initial error" in filing two competing lead plaintiff motions with different law firms "'in keeping with the policy intentions of the PSLRA'" because, *inter alia*, movant "acknowledged that she made a mistake" and, "upon discovering [it], she promptly directed [one firm] to withdraw one of her motions").

Just as in *Khunt* and *BAT*, Mr. Lindberg did not mistakenly move with two separate law firms, nor was his decision to do so lawyer driven.  Rather, his "authorization of the filing of two

---

[9] *See In re Cendant Corp. Litig.*, 264 F.3d 201, 268-70 (3d Cir. 2001) (approving three-member group); *Barnet*, 236 F.R.D. at 162-63 (appointing six-member group); *Weltz*, 199 F.R.D. at 133-34 (appointing seven-member group); *Reimer v. Ambac Fin. Grp., Inc.*, No. 08 CIV. 1273(NRB), 2008 WL 2073931, at *3, *5 (S.D.N.Y. May 9, 2008) (appointing three-member group).

6

separate motions reflected [his] strong desire to serve as a class representative in this litigation[.]" Dkt. No. 28-2 ¶ 4. This was "a strategic miscue" (*Khunt*, 102 F. Supp. 3d at 536) whereby he purposefully filed duplicative motions "based on [his] unknowing belief that it was advantageous to file two such motions" in the erroneous but good-faith belief that the filing of two motions was better than one (Dkt. No. 28-2 ¶ 2). Just as in *Khunt **and** BAT*, "[Mr. Lindberg] admits that he made a mistake. He rectified it. He seems to care very much about obtaining relief in light of the substantial losses he . . . suffered. His interests are fully aligned with those of the class." *Khunt*, 102 F. Supp. 3d at 537; *see also BAT*, 2024 WL 4351311, at *6.

The one case cited for the proposition that filing duplicative motions renders a movant inadequate is *Tsirekidze v. Syntax–Brillian Corp.*, where the court rejected a group's motion for appointment as lead plaintiff because one member of the group had "sent his lead-plaintiff certification **to the wrong firm in error**" (not to mention that same group member was "a high-volume day trader [that] might be subject to [a] unique defense"). No. CV–07–2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (emphasis added). Yet, both *Khunt **and** BAT* distinguished *Tsirekidze* from the present circumstances. In *Khunt*, the court found that the filing of duplicative motions was not a "gaffe" but rather "a strategic miscue" because the movant "answer[ed] that, in his zeal to be Lead Plaintiff, he made a regrettable mistake [of retaining two law firms] that he will not repeat." *Khunt*, 102 F. Supp. 3d at 536-37. Accordingly, the court "view[ed] this [issue] as a tempest in a teacup" that "show[s] nothing other than that [the movant] is an eager—if perhaps a little *over* eager—lead plaintiff." *Id.* at 537. The court in *BAT* followed *Khunt*'s reasoning to the same conclusion. *See BAT*, 2024 WL 4351311, at *6.

Finally, even assuming *arguendo* that the Court **were** to find the Fly-E Investor Group was an improper group, the Fly-E Investor Group respectfully submits that the Court could and should

consider the group's members individually.  Courts, particularly in this Circuit, can and routinely do consider members of groups for individual appointment, even where they have not sought such appointment.  *See, e.g.*, *Elstein*, 2014 WL 3687277, at *5 n.5 (collecting cases, finding "the Court may consider [a member] of th[e] group individually, as if she had moved to be appointed as lead plaintiff alone"); *Rosian v. Magnum Hunter Res. Corp.*, No. 13 CIV. 2668 KBF, 2013 WL 5526323, at *3 (S.D.N.Y. Oct. 7, 2013) (same); *In re CMED Sec. Litig.*, No. 11 CIV. 9297 KBF, 2012 WL 1118302, at *3, *5 (S.D.N.Y. Apr. 2, 2012) (same).

## II.      FALSE STATEMENTS OR ERRORS IN REINBLATT AND THE MAZZEO-ENG GROUP'S SUBMISSIONS RENDER THEM INADEQUATE

As discussed further in the Fly-E Investor Group's opposition brief, Reinblatt is inadequate under Rule 23 because he used a patently incorrect and seemingly arbitrary average lookback price to calculate his losses.  *See* Dkt. No. 28 at 4-5, 14-15, 18-20.  The Mazzeo-Eng Group is likewise inadequate because its submissions are riddled with errors and false statements.  Courts routinely deny lead plaintiff motions for such issues.  *See, e.g.*, *Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *6 (S.D.N.Y. Nov. 12, 2021) (finding the presence of errors in movant's "submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative"); *Lako v. Loandepot, Inc.*, No. 8:21-CV-01449-JLS-JDE, 2022 WL 1314463, at *5 (C.D. Cal. May 2, 2022) (expressing "serious concerns about [movant] . . . and its ability to protect the interests of absent class members fairly and adequately" because it "failed to select and apply a rational and consistently applied methodology for calculating its losses").

Here, as discussed in detail in the Fly-E Investor Group's opposition brief (*see* Dkt. No. 28 at 5, 18-19), although the PSLRA directs the use of a 90-day lookback period to calculate an average lookback price for the purpose of assigning value to certain transactions (*see* 15 U.S.C. §

8

78u-4(e)), Reinblatt inexplicably chose an improper and seemingly arbitrary 63-day lookback period to do so, resulting in him using an average lookback price of *$0.72* per share—significantly higher than that used by every other movant. *See* Dkt. No. 17-3 at *2.

The Mazzeo-Eng Group, meanwhile, submitted an amended Certification for its member Marina Mazzeo ("Mazzeo"), as well as an amended loss chart, with the filing of its opposition brief. *See* Dkt. Nos. 27-1, 27-2. The Mazzeo-Eng Group explained that the amended Certification "account[s] for trades made by Ms. Mazzeo in Fly-E . . . prior to the market opening on August 15th, 2025." Dkt. No. 27 at 2 n.1. Why did Mazzeo fail to include a purchase of *18,000* shares of Fly-E stock (*see* Dkt. No. 27-1 at *3) with her initial Certification, which she swore "under penalty of perjury" set forth an accurate record of her Class Period transactions in Fly-E securities? Dkt. No. 14-4 at *2 ¶ 4. The Mazzeo-Eng Group provides no explanation for the error. However, since the Class Period in this Action *ends* on August *14*, 2025 (*see* Dkt. No. 1 ¶ 1), and the heretofore undisclosed purchase occurred pre-market on August *15*, 2025, it appears that the Mazzeo-Eng Group initially (and rightfully) concluded that this purchase did not qualify for inclusion in their loss estimate and is now attempting to belatedly and improperly claim an additional *over $100,000* in losses from this same transaction. *Compare* Dkt. No. 14-5 at *2 (claiming Mazzeo incurred a loss of $422,802.60), *with* Dkt. No. 27-2 at *2 (claiming Mazzeo incurred a loss of $548,033.78). Further, as discussed *supra* at p. 4, the Mazzeo-Eng Group incorrectly alleged not once, *but twice*, that the Fly-E Investor Group is comprised of *six* investors when it in fact is comprised of only *five* investors. *See* Dkt. No. 27 at 2, 10 (claiming that the Fly-E Investor Group "is comprised of *five* distinct individuals *and* one company" (emphasis added)). In its opposition brief, the Mazzeo-Eng Group also states that a "Mr. Weeks" does not satisfy Rule 23's requirements. Dkt. No. 27 at

9

ii, 6. This appears to be another error, as no litigant named "Mr. Weeks" is presently before the Court.

### III.   REINBLATT HAS STILL NOT PROVIDED SUFFICIENT INFORMATION TO THE COURT TO EVALUATE HIS ADEQUACY

As discussed more fully in the Fly-E Investor Group *and* the Riisborg-Andvic Group's opposition briefs, Reinblatt has provided *no* meaningful information about himself for the Court to evaluate his adequacy, apart from his propensity for error. *See* Dkt. No. 26 at 7-8; Dkt. No. 28 at 5-6, 20-22. This is fatal to Reinblatt's motion. *See In re HEXO Corp. Sec. Litig.*, No. 19 Civ. 10965 (NRB), 2020 WL 5503634, at *1 (S.D.N.Y. Sept. 11, 2020) (finding "even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication."); *Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2019 WL 7759222, at *2 (S.D.N.Y. June 24, 2019) (disqualifying movant that "lacks basic transparency").

Here, Reinblatt conspicuously made no proffer whatsoever regarding, *inter alia*, his investment experience, age, location, or professional or educational background, if any, much less his understanding of the responsibilities of a Lead Plaintiff under the PSLRA. Reinblatt's continued failure to rectify this issue, despite having ample opportunity to do so in either of his opposition briefs (Dkt. Nos. 24-25), confirms his inadequacy.

### CONCLUSION

For the foregoing reasons, the Fly-E Investor Group respectfully requests that the Court issue an Order: (1) appointing the Fly-E Investor Group as Lead Plaintiff for the Class; and (2) approving its selection of Pomerantz as Lead Counsel for the Class.

Dated: December 1, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ J. Alexander Hood II*
J. Alexander Hood II

Jeremy A. Lieberman
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com
jlopiano@pomlaw.com

*Counsel for the Fly-E Investor Group and Proposed Lead Counsel for the Class*

KEHOE LAW FIRM, P.C.
Michael K. Yarnoff
(*pro hac vice* application forthcoming)
2001 Market Street
Suite 2500
Philadelphia, Pennsylvania 19103
Telephone: (215) 792-6676
myarnoff@kehoelawfirm.com

*Additional Counsel for the Fly-E Investor Group*

11

**CERTIFICATE OF WORD COUNT**

The undersigned, counsel of record for the Fly-E Investor Group, certifies that this brief contains 3,497 words, which complies with the word limit of Local Civil Rule 7.1(c).

Executed on December 1, 2025.

_/s/ J. Alexander Hood II_
J. Alexander Hood II
