UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————x

DINO KURT,

                Plaintiff,

    -against-

ZHOU OU, SHIWEN FENG, AND
FLY-E GROUP, INC.,

             Defendant.

——————————————————————x

:
:
:
:
:
:
:
:
:
:
:
:
:

**MEMORANDUM AND
ORDER**

25-CV-5017 (RER) (CHK)

**CLAY H. KAMINSKY, United States Magistrate Judge:**

Plaintiff Dino Kurt filed this putative class action alleging violations of the

Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934

(the "Exchange Act") by Fly-E Group, Inc, and two of the company's officers, Shiwen

Feng and Zhou Ou (together, "Defendants"). The Complaint alleges that Defendants

made false and misleading statements and failed to disclose material adverse facts

about Defendants' business, causing Plaintiffs and other shareholders to purchase

Fly-E shares at artificially inflated prices.

Eight movants seek to be named lead plaintiff in this litigation. The movants

are: (1) Kenneth Riisborg and Andvic Holding ApS ("Riisborg and Andvic");

(2) Matteo Lazzaretti; (3) Lars Torbjörn Edgren, Magnus Nilsson, Peter Schröder,

Peter Bertilson, and Curt Peter Lars Rehnborg (the "Edgren Group ");[1] (4) Kenneth

---

[1] While the Edgren Group refers to itself as the "Fly-E Investor Group," the Court finds that term
likely to cause confusion since several of the movants here constitute groups of purported Fly-E
investors.

Zalba; (5) Marina Mazzeo and Stanley Eng (the "Mazzeo Group"); (6) Ellis Reinblatt; (7) Corrado Tavelli, Kristian Wulff, Per-Olaf Keitsch and Tarun Sethi (the "Tavelli Group"); and (8) Fredrik Melin, Ringkallens Holding AB ("Ringkallens"), Ara Ainadin Zarei, and Jan and Helena Lindberg (the "Melin Group").[2] For the reasons explained below, the Court appoints Melin and Ringkallens as lead plaintiff and Pomerantz LLP as lead counsel.

## I.    Background

Plaintiffs are investors in Fly-E—a company that designs and sells electric motorcycles, bikes, mopeds, and scooters across the United States, Mexico, and Canada. ECF No. 1 ¶ 19. The Complaint alleges that Defendants provided Fly-E investors with "materially false and misleading" information about Fly-E's revenue growth and the safety of its products. *Id.* ¶ 28–30. Plaintiffs allege that the misleading statements made by Fly-E caused shareholders to purchase Fly-E's securities at an inflated price, and thus causing Plaintiffs financial losses. *Id.* ¶ 3.

Fly-E's Form NT 10-Q, filed on August 14, 2025, revealed that the company experienced a 32% decrease in net revenues, which Fly-E stated was attributable to "recent lithium-battery accidents involving E-Bikes and E-Scooters." *Id.* ¶ 4. The next day, Fly-E's stock price decreased from $7.76 per share to $1.00 per share. *Id.* ¶ 5.

Plaintiff Dino Kurt filed the present class action lawsuit on September 8, 2025. The next day, Kurt's counsel filed a notice in *Globe Newswire* announcing the

---

[2] Lazzaretti, Zalba, and the Tavellli Group have all filed notices of non-opposition since filing their original motion.

class action and alerting investors that they had until November 7, 2025 to file a lead-plaintiff motion. ECF No. 20-5. This, however, incorrectly identified the deadline for a lead-plaintiff motion. *See* ECF No. 20-2 at 4. Counsel later corrected the notice and provided investors with the correct deadline—November 10, 2025. *Id.* Eight individuals and groups motions to be appointed as lead plaintiff by the November 10, 2025 deadline. *See* ECF Nos. 6, 9–11, 14, 15, 20, 21.

## II.    <u>Legal Standard</u>

In actions brought under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court must appoint as lead plaintiff the member or members of the putative class that the Court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). This "most adequate plaintiff," *id.*, is the person or group that:

> (aa) has either filed the complaint or made a motion [to be appointed lead plaintiff];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). This presumption can be rebutted only by proof that most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

**III.** <u>**Discussion**</u>

    **A.**    **Notice to Class and Timeliness**

As an initial matter, under the PSLRA, the plaintiff who files the initial complaint must publish a notice "in a widely circulated national business-oriented publication or wire service" that "advis[es] members of the purported plaintiff class [ ] of the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must also advise that any member of the purported class may file a motion to serve as lead plaintiff within 60 days of the notice's publication. *Id.*

Even though no plaintiff has objected to the adequacy of notice, "courts have an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA." *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886, 2020 WL 8225336, at *3 (E.D.N.Y. Dec. 22, 2020). Here, the Court finds that the published notice meets the PSLRA's requirements. Notice was published in *Globe Newswire,* which courts in this district have deemed appropriate to notify potential class members of the action. *Cohen v. Luckin Coffee Inc.*, No. 1:20-CV-01293-LJL, 2020 WL 3127808, at *2 (S.D.N.Y. June 12, 2020) (finding publication in *Globe Newswire* satisfactory for notice). Although counsel initially incorrectly listed the deadline to file a lead plaintiff motion as November 7, 2025, counsel quickly corrected the error and identified the correct date as November 10, 2025. *See* ECF No. 20-2 at 4. All movants' motions were made by that date. Accordingly, the notice and timeliness requirements are met.

### B.     Largest Financial Interest

The Second Circuit considers four factors in determining which plaintiff has the largest financial interest: "(1) the total number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 349 (E.D.N.Y. 2018) (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)). Courts attribute the most weight to the fourth factor—the financial loss suffered. *Sanchez v. Arrival SA*, 22-CV-172, 2022 WL 20539729, at *4 (E.D.N.Y. Apr. 15, 2022). As the Melin Group alleges the largest financial interest in this case, $1,749,745, the Court considers its motion for appointment as lead plaintiff first. *See* ECF No. 20-4. The Melin Group's members include: Frederik Melin and the construction company Ringkallens Holding AB, of which Melin is the sole owner; Jan and Helena Lindberg, a married couple; and Ara Ainadin Zarei.

### 1.     Aggregation of the Melin Group's claims is unwarranted.

First, the Court must evaluate whether the aggregation of the Melin Group members' claims is appropriate. Although the PSLRA expressly allows a group of persons to be appointed as lead plaintiff, the PSLRA does not define what a "group" is, or the required degree of relation between members of the group. *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). Courts may allow groups of unrelated investors to serve as lead plaintiff, on a case-by-case basis, "if such a grouping would best serve the class." *Id.*

In cases where a group of investors seek appointment as lead plaintiff, courts are primarily concerned with whether the group can "function cohesively and effectively manage the litigation apart from their lawyers." *Tan v. NIO Inc.*, No. 19-CV-1424, 2020 WL 1031489, at \*3 (E.D.N.Y. Mar. 3, 2020) (quoting *Int'l Union of Operating Eng'rs Loc. No. 478 Pension Fund v. FXCM, Inc.*, No. 15-CV-3599, 2015 WL 7018024, at \*2 (S.D.N.Y. Nov. 12, 2015)). In determining whether aggregation is appropriate, courts consider: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Varghese*, 589 F. Supp. 2d at 392. Although a lack of a pre-litigation relationship is not disqualifying, *Luckin Coffee Inc.*, 2020 WL 3127808, at \*5, in such cases courts typically require "a more compelling showing as to their fitness for the position to abate any concern that [the] group has simply been 'cobbled together' for the purpose of achieving the lead plaintiff designation." *Jakobsen v. Aphria, Inc.*, No. 18-CV-11376, 2019 WL 1522598, at \*3 (S.D.N.Y. Mar. 27, 2019) (internal quotation marks omitted). The proposed lead plaintiff group bears the burden of demonstrating that aggregation is appropriate. *Evangelista v. Late Stage Asset Mgmt., LLC*, 784 F. Supp. 3d 542, 551 (E.D.N.Y. 2025).

Applying the *Varghese* factors, the Court finds that aggregation of the Melin Group's claims is not warranted. First, the Melin Group has not established a pre-litigation relationship. Although the Melin Group has two sets of members who had

6

a relationship before this case was filed, the Melin Group's declaration fails to describe how *all* group members had a relationship with one another before seeking to become lead plaintiff. *See Jakobsen*, 2019 WL 1522598, at *2 (rejecting argument that the movant group had a pre-existing relationship where only three of the five members had a relationship before the action was filed); *Chauhan v. Intercept Pharms.*, No. 21-CV-00036, 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) (denying motion where the movant group's joint declaration lacked any detail about the members' relationship and communication prior to filing the motion). Accordingly, this factor weighs against aggregation.

Second, the Melin Group has not demonstrated that the Group is actively involved in the litigation. The Melin Group's declaration contains only "vague discussions of general communication protocols"—like general references to discussions with counsel and their awareness of the case—that courts have deemed insufficient to show involvement in the litigation. *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019); ECF No. 20-7 ¶ 7. Such general statements are not sufficient to show that the Melin Group is actively involved in the litigation, especially when the Melin Group has not even asserted that they have discussed the case with one another. *See Jakobsen*, 2019 WL 1522598, at *3 (finding minimal engagement where the movant group's declaration stated only that the group was informed about their responsibilities, reviewed a complaint, and discussed the merits of the case); *Luckin Coffee*, 2020 WL 3127808, at *4 (rejecting similar boilerplate declaration); *Evangelista*, 784 F. Supp. 3d at 551 (same).

Third, the Melin Group offers only vague and conclusory descriptions of its plan for cooperation. For example, the Group states that it will satisfy its obligation as lead plaintiff by "conferring with each other and with our counsel regarding litigation strategy and other matters, attending court proceedings, depositions, any settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents." ECF No. 20-7 ¶ 10. Similar boilerplate assurances have been rejected by courts as insufficient evidence of cooperation. *See Jakobsen*, 2019 WL 1522598, at *3 (collecting cases); *Luckin Coffee*, 2020 WL 3127808, at *4. Again, the fact that the Melin Group has not even alleged that it has had a single phone call prior to the filing of their motion makes the Court hesitant to conclude that the Melin Group will "function cohesively and effectively manage the litigation apart from their lawyers." *Tan*, 2020 WL 1031489, at *3.

Finally, the Melin Group's declaration does not show that the Group independently selected counsel. In enacting the PSLRA, "Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff." *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997). Here, although the Melin Group states that it "selected and retained" Pomerantz as lead counsel, that statement does little to clarify how each member individually found counsel, formed the movant group, or selected counsel as a group. *See Luckin Coffee Inc.*, 2020 WL 3127808, at *4 (fifth *Varghese* factor weighed against aggregation where there was no evidence that the movant group "gathered together and engaged in a truly independent selection of counsel"); *Khunt v. Alibaba Grp.*

8

*Holding Ltd.*, 102 F. Supp. 3d 523, 534–35 (S.D.N.Y. 2015) (same). Accordingly, this factor is either neutral or weighs against aggregation. *See Lian v. Tuya Inc.*, No. 22 CIV. 6792, 2022 WL 17850134, at *4 (S.D.N.Y. Dec. 22, 2022) (finding fifth *Varghese* factor neutral or weighing against aggregation where the movant group's declaration did not "indicate whether they were introduced by outside counsel or whether they chose that counsel").

Although the Court finds that all members of the Melin Group are sophisticated investors—and therefore the fourth *Varghese* factor weighs its favor—the Group fails to meet its burden of demonstrating that the aggregation of its members' claims is appropriate. Therefore, the Melin Group's motion for appointment as lead plaintiff is denied.

### 2. Melin and Ringkallens' Interest

Although the Court will not appoint the Melin Group as lead plaintiff, it may consider the group's members as lead plaintiff if doing so would be in the best interest of the class. *See Evangelista*, 784 F. Supp. 3d at 552 (collecting cases); *In re Oxford Health Plans, Inc. Securities Litigation*, 182 F.R.D. 42, 49–50 (S.D.N.Y. 1998) (appointing three individual investors who were part of a larger movant group as lead plaintiff); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120–21 (S.D.N.Y. 2010) (appointing investor group and individual movant as lead plaintiff); *New Jersey Carpenters Health Fund v. Structured Asset Mortg. Invs. II, Inc.*, No. 08 CIV. 8093, 2009 WL 5103276, at *3 (S.D.N.Y. Dec. 23, 2009) (appointing separate

movants as lead plaintiff where it would "further judicial efficiency and be in the best interest of the putative class").

Here, the Court concludes that Melin and Ringkallens should be appointed as lead plaintiff. Melin is the sole owner of Ringkallens, and thus Ringkallens' losses logically impact Melin's financial interest in this case as well. Considered together, Melin and Ringkallens have the second highest financial losses in this action ($1,002,660), second only to the Melin Group's aggregated claims ($1,749,745). Melin and Ringkallens' financial losses outweigh the movant with the next highest financial loss—the Mazzeo Group—by over $200,000.[3] Given the PSLRA's emphasis on appointing the movant with the greatest loss as lead plaintiff, the Court finds that appointing Melin and Ringkallens as lead plaintiff is appropriate. *See In re: Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001) (explaining that an investor with the largest financial stake "would be motivated to act like a "real" client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price."); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 161 (S.D.N.Y. 2005) ("In other words, by enacting the PSLRA, Congress sought to encourage class members with the largest purported losses to act as lead plaintiffs in private securities litigation.").

As Melin and Ringkallens are related investors, the Court need not consider whether the two members will function cohesively as lead plaintiff. *See In re*

---

[3] The Court acknowledges that some movants contest the Mazzeo Group's calculations. *See* ECF No. 35. For the purposes of this discussion, the Court assumes without deciding that the Mazzeo Group's amended calculations are correct and their losses are $785,112.

*McDermott Int'l, Inc. Sec. Litig.*, No. 08 CIV. 9943, 2009 WL 579502, at *4 (S.D.N.Y. Mar. 6, 2009). In any event, the Court finds that they will function as a unit: Melin is authorized to bind Ringkallens in this litigation and serves as its main point of contact. ECF No. 20-7 ¶ 2. Accordingly, the Court finds that Melin and Ringkallens have the largest financial interest in this litigation.

## C. Rule 23 Requirements

Finally, the Court must determine whether the proposed lead plaintiff satisfies Rule 23's typicality and adequacy requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("At the lead plaintiff stage of the litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.") (quotations omitted).

A lead plaintiff's claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Evangelista*, 784 F. Supp. 3d at 554. Here, Melin and Ringkallens' claims are typical of the class because, like the other members of the class, Melin and Ringkallens allege that they purchased Fly-E's stock during the class period and suffered losses attributable to Fly-E's misleading statements. *See Jakobsen*, 2019 WL 1522598, at *5 (typicality requirement met where plaintiff made the same claim that he purchased the company's stock during the class period and suffered losses attributable to the company's misleading statements); *Evangelista*, 784 F. Supp. 3d at 554 (same).

Next, a lead plaintiff is deemed adequate where: "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the [proposed lead plaintiff and] class [have] a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Evangelista*, 784 F. Supp. 3d at 554 (quoting *Yang v. Tr. for Advised Portfolios*, No. 21-CV-1047, 2022 WL 970772, at *4 (E.D.N.Y. Mar. 31, 2022)). Melin and Ringkallens have also met this requirement. First, Melin and Ringkallens have chosen qualified and experienced counsel, Pomerantz LLP. Second, there is no reason to believe that Melin and Ringkallens' claims are antagonistic to any other class members' interests. Finally, given that Melin and Ringkallens have the largest financial interest in this case by a significant margin, the Court finds that they will vigorously prosecute this case. *See Nakamura v. BRF S.A.*, No. 18-CV-2213, 2018 WL 3217412, at *4 (S.D.N.Y. July 2, 2018) ("[Movant] has preliminarily shown that it would fairly and adequately represent the proposed class because it has no known conflict with the class members, has a sufficient interest in the outcome to insure vigorous advocacy and has selected qualified and experienced counsel.") Accordingly, Melin and Ringkallens have satisfied the Rule 23 requirements of typicality and adequacy as required by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). As Melin and Ringkallens have timely filed their claim, asserted the largest financial interest, and satisfied the PSLRA Rule 23 requirements, they are entitled to a rebuttable presumption that they are the most adequate lead plaintiff. *See Evangelista*, 784 F. Supp. 3d at 555–56.

**D.     Rebuttal of the Presumption**

The presumption that Melin and Ringkallens are the most adequate plaintiff can be rebutted only by proof that they "(aa) will not fairly and adequately protect the interests of the class; or (bb) [are] subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No party has presented any proof that Melin and Ringkallens would not protect the interests of the class or are subject to any unique defenses, and the Court is not aware of any factors that would rebut the presumption that Melin and Ringkallens are the most adequate lead plaintiff. Instead, this case "appears to be a fairly common class action . . . where class members are relying on the same statements or omissions as the factual basis of their claims, and where the financial losses are tied to the drop in value that occurred after the IPO." *Xiangdong Chen v. X Fin.*, No. 19-CV-6908, 2020 WL 2478643, at *4 (E.D.N.Y. May 13, 2020). Accordingly, Melin and Ringkallens are appointed as lead plaintiff.

## IV.     <u>Approval of Lead Counsel</u>

Under the PLSRA, the most adequate lead plaintiff selects and retains counsel to represent the class, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). There is a strong presumption in favor of approving counsel selected by the lead plaintiff. *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015). Here, Melin's chosen counsel, Pomerantz LLP, is qualified to represent the class. The Melin Group's declaration explains that Pomerantz "has a proven history of handling this type of complex litigation" including "achieving

substantial recoveries in securities class actions." ECF No. 20-7 at ¶ 15. The Court approves Melin and Ringkallens' selection of Pomerantz as lead plaintiff's counsel.

## V. <u>Conclusion</u>

For the foregoing reasons, the Melin Group's motion, ECF No. 20, is granted in part and denied in part. Melin and Ringkallens are appointed as lead plaintiff and Pomerantz is appointed as lead counsel. All other motions to be appointed lead counsel, ECF Nos. 6, 9, 10, 11, 14, 15, 18, 21, are accordingly denied.

SO ORDERED.

/s/ Clay H. Kaminsky
CLAY H. KAMINSKY
United States Magistrate Judge

Dated:     April 14, 2026
            Brooklyn, New York