POMERANTZ LLP

**Brian P. O'Connell**
Of Counsel

August 21, 2026

**VIA ECF**
Judge Ramon E. Reyes, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 2E North
Brooklyn, NY 11201

**RE: *Kurt v. Ou et al.*, 1:25-cv-05017-RER-CHK (E.D.N.Y.)**

Dear Judge Reyes:

Lead Plaintiffs Fredrik Melin ("Melin") and Ringkallens Holding AB ("Plaintiffs") write in response to the letter from Defendants Fly-E Group, Inc. ("Fly-E" or the "Company"), Zhou Ou ("Ou"), Ruifeng Guo ("Guo"), Shiwen Feng, Bin Wang, Lun Feng, and Alan Jacobs (collectively, "Fly-E Group Defendants" and "Fly-E Group Letter", ECF No. 62) requesting leave to file a motion to dismiss. Although Plaintiffs maintain that their First Amended Complaint (the "Complaint," ECF No. 60), is well-pled, Plaintiffs respectfully request leave to amend their complaint to add additional allegations to remove any potential uncertainty in connection with the Section 11 claim.[1]

**Plaintiffs Plead Actionable Misstatements**. Fly-E Group Defendants argue that the statements about Fly-E's manufacturing, design, and compliance risks were merely general, forward-looking statements, and therefore could not be relied upon. But the safe harbor for forward-looking statements categorically does not apply to statements "made in connection with an initial public offering[,]" *see* 15 U.S.C. §78u-5(b)(2)(D). Moreover, the safe harbor provides no protection, as here, for misrepresentations of historical and current material facts. *See City of Providence v. Aeropostale, Inc.*, 11-Civ-7132(CM)(THK), 2013 WL 1197755, at *12-13 (S.D.N.Y. Mar. 25, 2013). Nor is Fly-E Group Defendants' truth-on-the-market defense appropriate. *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000) (holding that the inquiry is intensely fact specific and rarely appropriate to consider on a motion to dismiss); *Gimpel v. Hain Celestial Grp., Inc.*, 156 F.4th 142-43 (2d Cir. 2025) (rejecting truth-on-the-market defense where, as here, defendants relied on tangentially related SEC filings to seek dismissal). Fly-E Group Defendants did not disclose that they were using counterfeit UL Certification marks until

[1] References herein to ¶ or ¶¶ are to the Complaint.

boconnell@pomlaw.com
10 South LaSalle St., Suite 3505, Chicago, IL 60603 Main: 312.377.1181 Direct: 312.881.4859
NEW YORK CHICAGO LOS ANGELES LONDON PARIS TEL AVIV
www.pomlaw.com

they disclosed the Consent Judgment on May 28, 2025. Until then, they expressly denied any impropriety, obfuscating rather than disclosing the truth.[2] Nor are the statements mere puffery: they claimed compliance with regulations while being inundated with safety violations, claimed that Fly-E "principally engaged in designing" electric vehicles when primarily all it did was re-brand them, and claimed that Fly-E manufactured when the electric vehicles in fact arrived almost entirely pre-assembled. ¶¶6, 33, 60, 101; *see Karimi v. Deutsche Bank Aktiengesellschaft*, 607 F. Supp. 3d 381, 392-93 (S.D.N.Y. 2022) (rejecting puffery argument where statements contradicted true state of internal affairs).

**Plaintiffs Plead Scienter for Exchange Act Claims**. An inference of scienter "need not be irrefutable . . . or even the most plausible," and Plaintiffs are not required to provide a "smoking-gun." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007) (internal quotations omitted). Three of the Exchange Act Defendants (the Company, Ou, and Guo) have admitted that they "had reason to know that they did not have authorization to use the UL Marks" and that "UL previously notified Defendants on multiple occasions that they did not have authorization to use the UL Certification Marks." Ou also admitted knowledge of the component electric vehicle parts, including defective batteries, and senior employees testified that the Company did not principally manufacture or design its own bikes. ¶¶33, 100-01.

The Complaint bolsters these allegations by pleading that the sale of electric micromobility vehicles was Fly-E's core operation. ¶103; *see Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc*., 367 F. Supp. 3d 16, 38 (S.D.N.Y. 2019) (misstatements about a company's "primary profit engine" support scienter). Also, the Exchange Act Defendants personally signed and falsely certified to the accuracy of the offending filings under the Sarbanes-Oxley Act ("SOX"). ¶¶104-07; *see Plumbers and Pipefitters Nat'l Pension Fund v. Davis*, 16-cv-3591-GHW, 2020 WL 1877821, at *14 (S.D.N.Y. Apr. 14, 2020). Moreover, that Fly-E was in a precarious financial condition supports the inference that Exchange Act Defendants were motivated to conceal the truth from investors while they continued to raise capital. *See* ¶108; *Leone v. ASP Isotopes Inc*., 811 F. Supp. 3d 563, 607 (S.D.N.Y. 2025). In addition, the widespread resignations among Defendants and senior employees bolster the inference of fraud. *See* ¶¶109-10; *In re Scot. Re Grp. Sec. Litig*., 524 F. Supp. 2d 370, 394 n.176 (S.D.N.Y. 2007).[3]

**Plaintiffs Allege Loss Causation for the Exchange Act Claims**.[4] The Complaint pleads loss causation by alleging that the stock dropped precipitously after two corrective disclosures on May 28, 2025 and August 14, 2025. ¶¶111-14. On May 28, 2025, Fly-E disclosed a $1 million

[2] The Court should reject the Fly-E Group Defendants' attempt at introducing documents that are neither subject to incorporation by reference nor judicial notice, or to draw factual inferences from them.

[3] Fly-E Group Defendants' group pleading arguments are misplaced because the Complaint raises a strong inference of scienter as to each Exchange Act Defendant, and scienter may be imputed to Fly-E even absent individual scienter. *See Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.,* 531 F.3d 190, 196 (2d Cir. 2008).

[4] Loss causation is not an element of a Securities Act claim. *See In re Arqit Quantum Inc. Sec. Litig*., 774 F. Supp. 3d 505, 534 (E.D.N.Y. 2025).

settlement with UL and agreed to stop selling bikes with counterfeit UL Certifications, causing its stock to fall 9.59%. In August, Fly-E reported a 32% decline in net revenue driven by reduced e-bike sales amid an increasing number of lithium-battery explosions, sending its stock down more than 87% in one day. *See Abramson v. Newlink Genetics Corp*., 965 F.3d 165, 179 (2d Cir. 2020) ("[P]laintiffs sufficiently plead loss causation when they allege that their share's price fell significantly after the truth became known.") (internal quotation omitted). Unlike in *Lentell v. Merrill Lynch & Co*., 396 F.3d 161, 175 (2d Cir. 2005), where the eventual downgrade of a stock did not reveal the falsity of a prior recommendation, the disclosures relate back to the alleged false statements and omissions. Plaintiffs do not have to rule out other causes of drops at the pleading stage. *City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, No. 17 CIV. 10014 (LGS), 2019 WL 719751, at *8 (S.D.N.Y. Feb. 19, 2019).[5]

**Although Fly-E Group Defendants' Standing Arguments Are Misplaced, Plaintiffs Request Leave to Amend Section 11 Allegations.** Plaintiffs allege that they purchased or acquired shares traceable to the Defective Registration Statement. ¶18. At the pleading stage, that allegation is generally sufficient. *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 384 (S.D.N.Y. 2015).

Nevertheless, Plaintiffs agree that the allegation of additional facts would eliminate any uncertainty regarding the issue. Plaintiffs believe such amendment would conserve the parties' and the Court's resources, and respectfully request leave to do so by September 14, 2026.[6] *See Johnson v. City of New York*, No. 16-CV-6426(KAM)(VMS), 2018 WL 5282874, at *6 (E.D.N.Y. Oct. 24, 2018) (noting that the "fundamental purpose" of a premotion letter and conference is to discuss potential defects in the pleading, and to allow plaintiffs to replead to address such defects); *Baez v. American Honda Motor Company, Inc et al*., No. 2:25-cv-05290, ECF No. 9, Minute Entry (E.D.N.Y. Sep 29, 2025) (granting leave to file a second complaint after plaintiff requested it in response to a pre-motion to dismiss letter).

---

[5] *In re Omnicom Grp., Inc. Sec. Litig*., 597 F.3d 501, 505 (2d Cir. 2010), is not applicable, as that was a summary judgment holding. Moreover, unlike in *Omnicom*, the Fly-E Group Defendants disputed the reported facts. Fly-E Group Defendants' claim that the declines were delayed is likewise incorrect: both corrective disclosures caused market losses the next trading day, unlike *Huey*, which involved a two-trading-day delay after the disclosure until shares meaningfully declined. *See Huey v. Anavex Life Scis. Corp*., 180 F.4th 56, 71 (2d Cir. 2026).

[6] Plaintiffs request the September 14, 2026 deadline because of several pre-existing deadlines during the next three weeks, including class certification briefing, motion to dismiss briefing in another matter, and deadlines for filing two other complaints. Plaintiffs also respectfully request this additional time to accommodate pre-scheduled personal obligations of Plaintiffs' counsel, as well as the upcoming federal holiday and Rosh Hashanah, which certain attorneys on this case observe.

Sincerely,

*<u>/s/ Brian P. O'Connell</u>*
Joshua B. Silverman (*pro hac vice forthcoming*)
Brian P. O'Connell (*pro hac vice*)
**POMERANTZ LLP**
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Tel.: (312) 377-1181
Fax: (312) 377-1184
jbsilverman@pomlaw.com
boconnell@pomlaw.com

*Lead Counsel for Plaintiffs*

**KEHOE LAW FIRM, P.C.**
Michael K. Yarnoff
2001 Market Street Suite 2500
Philadelphia, PA 19103
Tel: (215) 792-6676
myarnoff@kehoelawfirm.com

*Additional Counsel for Lead Plaintiffs*

Cc: All counsel of record (via ECF)